IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00398-CV

 

College Station Medical Center, LLC,

                                                                                    Appellant

 v.

 

Alma Doreen Todd,

                                                                                    Appellee

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 09-000300-CV-85

 



MEMORANDUM  Opinion










 

            Alma Doreen Todd sued College Station Medical Center, LLC for injuries she sustained from a fall while trying to
make her way to the bathroom in her hospital room.  Because the trial court
erred in failing to dismiss Todd’s vicarious liability claims and her alleged premises
liability claims, we reverse and remand the trial court’s order which dismissed
in part and denied in part CSMC’s motions to dismiss.

Background

            Todd was admitted to College Station Medical Center for corrective surgery.  After surgery, Todd allegedly called
repeatedly for assistance to go to the restroom.  When no one responded, she
attempted to get up and go on her own.  She fell, suffering cuts and broken
bones.  Todd filed her original petition against CSMC on February 3, 2009 alleging negligence of CSMC based on direct and vicarious liability claims.  But in
her original petition, Todd did not identify any specific employee’s conduct as
a basis of her claims.  On March 6, 2009, well within the 120-day deadline, CSMC was served with a report and curriculum vitae from a nurse, S. Francis Scholl
Foster.  CSMC filed objections to this report.  No other reports were served on
CSMC until June 8 and June 12, 2009, outside the 120-day deadline.  CSMC filed two motions to dismiss pursuant to section 74.351(b) of the Texas Civil
Practice and Remedies Code contending that no expert report was filed and a
dismissal of Todd’s claims was required.  

            At the conclusion of the first
hearing, the trial court stated on the record that CSMC’s motion was granted as
to Todd’s direct liability claims but denied as to Todd’s vicarious liability
claims.  No written order based on that hearing was ever signed.  After the
hearing, rather than request an extension of time in which to file an expert
report, Todd amended her petition to delete her direct liability claims against
CSMC and added what she alleged to be a premises liability claim.  CSMC filed
another motion to dismiss pursuant to section 74.351(b) again alleging that no
expert report was filed and that a dismissal of Todd’s claims, including the
premises liability claims, was required.  Todd responded to the second motion
but again did not request an extension of time in which to file an expert
report.  After a second hearing, the trial court again granted CSMC’s motion as
to the formerly included direct liability claims, but denied the motion as to
the vicarious liability claims and premises liability claim.  A written order
was signed on November 19, 2009.  CSMC appeals the trial court’s denial of its
motion to dismiss as to Todd’s vicarious liability claims and premises
liability claim.  Todd, however, does not contest the validity of the trial
court’s order dismissing her direct liability claims.

Applicable Law

            Section 74.351 of the Civil Practices
and Remedies Code provides that within 120 days of filing a health care
liability claim, a claimant must serve a curriculum vitae and one or more
expert reports regarding every defendant against whom a health care claim is
asserted.  Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(a) (Vernon Supp. 2009).  “Section 74.351 has numerous
subparts, including: 

            . subpart (b) requiring trial courts
to dismiss a claim with prejudice and award fees if ‘an expert report has not
been served’ by the statutory deadline; 

            . subpart (c) allowing a 30-day
extension of the deadline if a report is found inadequate; and

            . subpart (l) providing that a motion
challenging a report's adequacy should be granted only if the report does not
represent a good-faith effort to comply with the statute.”  Lewis v.
Funderburk, 253 S.W.3d 204, 207 (Tex. 2008) (footnotes omitted); Tex. Civ. Prac. & Rem. Code Ann. §
74.351(b), (c), (l) (Vernon Supp. 2009).

            We review a trial court's denial of a
motion to dismiss under section 74.351 for abuse of discretion.  Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002); American
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001).  

 

No Report

            In its first issue, CSMC argues that
the trial court abused its discretion in denying CSMC’s motion to dismiss when
Todd failed to serve CSMC with an expert report. CSMC contends that the only
report served within 120 days after the filing of Todd’s original petition was
the report of a nurse who is statutorily disqualified from rendering an opinion
on causation.  Thus, CSMC argues, the trial court should have dismissed Todd’s
vicarious liability claims.  

            To the extent Todd alleges that CSMC
is liable vicariously for its employees actions, the expert report requirement
is fulfilled as to CSMC if the report is adequate as to its employees.  See
 Gardner v. U.S. Imaging, Inc., 274 S.W.3d 669, 672 (Tex. 2008).  An "expert report" means:

A written report by an expert that provides
a fair summary of the expert's opinions as of the date of the report regarding
the applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards and the causal
relationship between that failure and the injury, harm, or damages claimed.

 

Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(r)(6) (Vernon
Supp. 2009) (emphasis added).  The report must include the expert's opinion on
each of the three elements that the statute identifies: standard of care,
breach, and causal relationship.  Bowie, 79 S.W.3d at 52; Palacios,
46 S.W.3d at 878.  An expert as to the causal relationship between the injury
claimed and the breach of the standard of care is statutorily defined as “a physician
who is otherwise qualified to render opinions on such causal relationship under
the Texas Rules of Evidence.”  Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(r)(5)(D) (Vernon Supp. 2009)
(emphasis added).  Further, only a physician who is otherwise qualified
to render opinions on that causal relationship under the Texas Rules of
Evidence may qualify as an expert.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.403(a) (Vernon Supp. 2009).  So,
before a document can be considered an expert report, it must be rendered by
one who fits the definition of an expert and who is qualified to testify as an
expert on the particular subject-matter.  See Chisholm v. Maron,
63 S.W.3d 903, 907 (Tex. App.—Amarillo 2001, no pet.); Hopkins County Hosp.
Dist. v. Ray, No. 06-08-00129-CV, 2009 Tex. App. LEXIS 1269, *5 (Tex.
App.—Texarkana Feb. 24, 2009, no pet.) (mem. op.).  A nurse is not a physician
and therefore is neither an expert nor is qualified to render an expert opinion
regarding causation.  Tex. Civ. Prac.
& Rem. Code Ann. §§ 74.351(r)(5)(D); 74.403(a) (Vernon Supp. 2009). 


            Accordingly, the nurse’s report,
standing alone, is not an expert report.  And because there is no report as to
the direct liability claims against CSMC, there is no report as to the
vicarious liability claims against CSMC.  See Gardner v. U.S.
Imaging, Inc., 274 S.W.3d 669, 671-672 (Tex. 2008) (“When a party's alleged
health care liability is purely vicarious, a report that adequately implicates
the actions of that party's agents or employees is sufficient.”).  

            But Todd counters that no report on
causation is required because the link between Todd’s self help to the
restroom, her fall, and her injuries is a link that a layperson can determine. 
The cases Todd relies on do not pertain to a Chapter 74 expert report in health
care liability cases but pertain only to testimony regarding proof of causation
at a trial on the merits.  See Guevara v. Ferrer, 247 S.W.3d 662
(Tex. 2007); State Office of Risk Mgmt. v. Larkins, 258 S.W.3d 686 (Tex. App.—Waco 2008, no pet.); Columbia Med. Ctr. Subsidiary, L.P. v. Meier, 198
S.W.3d 408 (Tex. App.—Dallas 2006, pet. denied); see also Morgan v.
Compugraphic Corp., 675 S.W.2d 729 (Tex. 1984) (default judgment that was
reversed by court of appeals for insufficient proof of causation; Texas Supreme
Court reversed).  

            The issue at this point in the
proceeding, though, is not a determination of the merits of the claim.  In
submitting an expert report pursuant to Chapter 74, a plaintiff need not
marshal all of her proof.  Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 879 (Tex. 2001).  Further, the Texas Supreme Court
has held that the Legislature intended health care liability claims to be
scrutinized by an expert or experts before the suit can proceed.  Murphy
v. Russell, 167 S.W.3d 835, 838 (Tex. 2005).  As the Supreme Court has
stated, the expert report requirement

            … establishes a threshold over which a
claimant must proceed to continue a lawsuit.  It does not establish a
requirement for recovery.  It may be that once discovery is complete and the
case is tried, there is no need for expert testimony… But the Legislature
envisioned that discovery and the ultimate determination of what issues are
submitted to the factfinder should not go forward unless at least one expert
has examined the case and opined as to the applicable standard of care, that it
was breached, and that there is a causal relationship between the failure to
meet the standard of care and the injury, harm, or damages claimed.

 

Id.  Thus, Todd's statutory obligation to file a
timely expert report remains even if causation is commonly understood.  See
Hector v. Christus Health Gulf Coast, 175 S.W.3d 832, 838 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  

            Therefore, because no timely report
was filed, the trial court erred in failing to dismiss Todd’s vicarious
liability claims against CSMC.  CSMC’s first issue is sustained.

 

Artful Pleading

            CSMC next contends that the trial
court erred in denying CSMC’s motion to dismiss Todd’s alleged premises
liability claim because the claim is an improper recasting of Todd’s health
care liability claim.

            In determining whether a particular
case presents a "health care liability claim," we examine the
underlying nature of the allegations.  Garland Cmty. Hosp. v. Rose,
156 S.W.3d 541, 543-44 (Tex. 2004).  We focus on the essence of the
claim and consider the alleged wrongful conduct and the duties allegedly
breached, rather than the injuries suffered.  See Diversicare Gen.
Partner, Inc. v. Rubio, 185 S.W.3d 842, 851 (Tex. 2005).  Further we are
not bound by the party's characterization of the claim.  Id.  A claimant
cannot escape the Legislature's statutory scheme by artful pleading.  Murphy
v. Russell, 167 S.W.3d 835, 838 (Tex. 2005).

            In her original petition, Todd stated,
“This is a health care liability claim.”  She then alleged in paragraph VI that

            COLLEGE STATTION MEDICAL CENTER, LLC, its nurses and staff were negligent in at least the following particulars, to wit:

A.   
Failure to adequately and
timely assess, establish nursing diagnoses, plan, implement and evaluate  ALMA
DOREEN TODD’S care and condition;

 

B.    
Failure to hire and train
appropriate personnel to monitor, supervise and/or treat ALMA DOREEN TODD;

 

C.    
Failure to render timely and
appropriate medical treatment and nursing intervention to ALMA DOREEN TODD;

 

D.   
Failure to provide ALMA DOREEN
TODD with adequate supervision and assistive devices to prevent falls and
injury;

 

E.    
The retention of unfit,
unqualified and incompetent staff;

 

F.     
Failure to provide sufficient
numbers of staff to meet said patient’s fundamental care needs;

 

G.   
Failure to provide the patient
with quality care, e.g., the necessary care and services to attain, or
maintain, the highest practicable physical, mental and psychosocial well-being,
in accordance with the assessment and care plan;

 

H.   
In failing to provide adequate
nursing care considering the medication schedule, physical and metal condition,
health and body size of ALMA DOREEN TODD;

 

I.       
Failure to formulate and
implement a sufficient care plan regarding the fundamental care needs of ALMA
DOREEN TODD;

 

J.       
Failure to report and document
ALMA DOREEN TODD’S condition, treatment and response in accordance with
accepted nursing standards and practices that are completely and accurately
documented; and,

 

K.   
Failure to provide ALMA DOREEN
TODD with quality of life, dignity and respect with all care necessary to
achieve the highest possible level of health.

 

            Following the initial
hearing on CSMC’s two motions to dismiss where the trial court orally granted
the motions as to these claims, Todd dropped these allegations.  In her second
amended petition, Todd deleted her statement that “[t]his is a health care
liability claim.”  She then deleted her previous allegations in paragraph VI
and instead, alleged the following.

            As alleged hereinbefore, Plaintiff was
a patient at COLLEGE STATION MEDICAL CENTER, LLC and was an invitee upon the
premises owned, occupied and controlled by COLLEGE STATION MEDICAL CENTER, LLC.  Plaintiff because a patient at COLLEGE STATION MEDICAL CENTER, LLC by
virtue of agreeing to pay COLLEGE STATION MEDICAL CENTER, LLC for room, board,
basic household services, personal assistance when needed, nursing services,
medication and use of the facilities, particularly the use of a hospital room,
the room’s bed and the room’s restroom facility.  The Plaintiff’s room
contained a bed which was equipped with bedrails.  The room was also equipped
with a call button which allowed Plaintiff to electronically summon hospital
personnel to her room.  On the occasion of the accident in question, Plaintiff
attempted to summon hospital personnel to her room by use of the electronic
call button mechanism so that she could receive assistance to go to the room’s
restroom facility.  However, no one responded.  Failing to receive assistance,
Plaintiff then got out of her bed and attempted to walk to the restroom without
assistance.  Because Plaintiff was elderly, recovering from surgery, wearing a
sequential pressure device, and had been given a sedative, Plaintiff fell and
was thereby severely injured.  Had COLLEGE STATION MEDICAL CENTER, LLC’S employees
responded to the Plaintiff’s electronic call for assistance in a timely manner
and/or had the bedrails on Plaintiff’s bed been put in the raised position,
Plaintiff’s fall would not have occurred.

            Todd further alleged

            Answering a patient’s electronic call
for assistance does not implicate professional health care expertise judgment
or discretion.  Rather, answering the Plaintiff’s call was mandatory and
nondiscretionary inasmuch as it was one of the bundle of services that
Plaintiff was paying for and that COLLEGE STATION MEDICAL CENTER, LLC had
agreed to provide.  Furthermore, the failure to raise the bedrails on
Plaintiff’s bed under the circumstances created an unreasonably dangerous
physical condition (premises defect) of which COLLEGE STATION MEDICAL CENTER, LLC’S employee(s) had actual notice which, in turn, proximately caused
Plaintiff’s injuries and damages.  The creation of or failure to cure this
unreasonably dangerous condition does not implicate health care expertise or
professional judgment.  Rather, it is (was) a negligent failure to utilize or
engage the safety features of the Plaintiff’s hospital bed in the manner which
was intended by the manufacturer and in the manner required by COLLEGE STATION
MEDICAL CENTER, LLC’S own policies, practices, procedures and rules.

 

            The obligation of a health
care facility to its patients is not the same as the general duty a premises
owner owes to invitees.  Diversicare, 185 S.W.3d at 851; NCED Mental
Health, Inc. v. Kidd, 214 S.W.3d 28, 37 (Tex. App.—El Paso 2006, no pet.). 
Health care staff make judgments about the care, treatment, and protection of
individual patients and the patient populations in their facilities based on
the mental and physical care the patients require.  Id.  This is
distinct from the duty of ordinary care owed by premises owners to their
residents and invitees.  See id.  Focusing on the essence of the
claims, Todd’s “new” allegation constitutes a health care liability claim
because it is based on a claimed departure from the standards of care related
to health care, safety, and professional and administrative services directly
related to health care.  In this regard, it is nothing more than an improper
effort to recast the prior pleading, which is clearly a health care liability claim,
as only a premises defect when the substance of the claim remains unchanged.

            Accordingly, the trial
court erred in failing to dismiss this claim as well because no report was
timely filed.  CSMC’s second issue is sustained.

Conclusion

            Having sustained both of
CSMC’s issues on appeal, we reverse the trial court’s order and remand this
case for further proceedings consistent with this opinion.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Reyna, and

            Justice
Davis

Reversed
and remanded

Opinion
delivered and filed September 1, 2010

[CV06]