IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-1101

════════════

 

Mark T. Murphy, M.D.,
Petitioner,

 

v.

 

Johnette Russell, Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Fifth District of
Texas

════════════════════════════════════════════════════

 

 

PER
CURIAM

 

Justice O’Neill did
not participate in the decision.

 

Johnette Russell sued an
anesthesiologist, Mark Murphy, after he allegedly administered a general
anesthetic without her consent during a biopsy. The trial court dismissed
Russell’s suit because she failed to provide an expert report in accordance
with section 13.01 of former Texas Revised Civil Statutes article 4590i.[1]
The court of appeals reversed, holding that Russell’s claims are not “health
care liability claims.”[2]
We reverse the court of appeals’ judgment and dismiss this suit.

Russell’s petition in the trial court alleges the
following facts. In September 1998, Russell went to the Zale
Lipshy Hospital in Dallas for a biopsy. She told a
nurse, who had approached her to insert an intravenous line, that she would
only permit the administration of a local anesthetic. She asked to discuss the
matter with the anesthesiologist, Dr. Mark Murphy, and told him she did not
want to be sedated or to lose consciousness. Murphy assured her that he would
not sedate her but told her he still wanted to insert an IV line to administer
a saline solution and perhaps antibiotics. Once she was in the operating room,
the hospital staff inserted an air tube in her nose, and she lost
consciousness. When she awoke in the recovery room, Murphy admitted he had
sedated her contrary to her instructions.

Russell sued Murphy, asserting battery, breach of
contract, and violations of the Deceptive Trade Practices Act (DTPA), seeking
actual, exemplary, and additional DTPA damages.[3]
Russell did not file an expert report within 180 days of filing suit or at any
time thereafter, and Murphy moved to dismiss her lawsuit, arguing that the
claims are “health care liability claims” subject to the requirements of former
article 4590i.[4]
The trial court granted the motion and dismissed the case. The court of appeals
reversed the trial court’s judgment, reasoning that “Russell does not allege
and need not prove that Murphy deviated from any standard of medical care,
health care, or safety”, and therefore no expert medical report was required.[5]
This was incorrect.

Former article 4590i and its expert report
requirements apply to a patient’s claims, regardless of whether they are tort
or contract claims, when those claims come within the statutory definition of a
“health care liability claim.” That definition is:

 

“Health care liability claim” means a cause of action against
a health care provider or physician for treatment, lack of treatment, or other
claimed departure from accepted standards of medical care or health care or
safety which proximately results in injury to or death of the patient, whether
the patient’s claim or cause of action sounds in tort or contract.[6]

 

“Health care” is also a defined term:

 

“Health care” means any act or treatment performed or
furnished, or which should have been performed or furnished, by any health care
provider for, to, or on behalf of a patient during the patient’s medical care,
treatment, or confinement.[7]

 

“Medical care” is defined: 

 

“Medical care” means any act defined as practicing medicine
in Article 4510, Revised Civil Statutes of Texas, 1925, as amended, performed
or furnished, or which should have been performed, by one licensed to practice
medicine in Texas for, to, or on behalf of a patient during the patient’s care,
treatment, or confinement.[8]

 

Former article 4590i provides that in every suit
in which a health care liability claim is asserted, an expert report must be
filed within 180 days after suit was filed, subject to certain extensions not
relevant here.[9]
The requirements for an expert report are specified:

 

“Expert report” means a written report by an expert that
provides a fair summary of the expert’s opinions as of the date of the report
regarding applicable standards of care, the manner in which the care rendered
by the physician or health care provider failed to meet the standards, and the
causal relationship between that failure and the injury, harm, or damages
claimed.[10]

 

Russell’s battery claim arises from treatment
rendered by Murphy. Medical treatment will not constitute a battery unless it
is provided without the patient’s consent.[11]
But failure to obtain consent does not automatically result in liability. There
may be reasons for providing treatment without specific consent that do not
breach any applicable standard of care. The existence
or nonexistence of such reasons is necessarily the subject of expert testimony.
In enacting former article 4590i, the Legislature intended health care
liability claims to be scrutinized by an expert or experts before the suit can
proceed. Russell cannot avoid the requirements of former article 4590i,
including its expert report requirement and caps on damages, by filing a
bare-bones pleading that asserts battery based on lack of consent. We reaffirm
that a claimant cannot escape the Legislature’s statutory scheme by artful
pleading.[12]

It must also be borne in mind that article 4590i’s
expert report requirement establishes a threshold over which a claimant must
proceed to continue a lawsuit. It does not establish a requirement for
recovery. It may be that once discovery is complete and the case is tried,
there is no need for expert testimony. In a case alleging lack of consent, a factfinder might reasonably conclude that there was a
battery and that some damages were sustained without the need for expert
testimony. But the Legislature envisioned that discovery and the ultimate
determination of what issues are submitted to the factfinder
should not go forward unless at least one expert has examined the case and
opined as to the applicable standard of care, that it was breached, and that
there is a causal relationship between the failure to meet the standard of care
and the injury, harm, or damages claimed. The fact that in the final analysis,
expert testimony may not be necessary to support a verdict does not mean the
claim is not a health care liability claim. A claim may be a health care
liability claim to which the damage caps and expert report requirements are
applicable and yet not require expert testimony to prevail at trial.

Russell cannot circumvent an expert examination of
her claims simply by asserting that she did not consent to a general anesthetic
and that the physician admitted he failed to follow her wishes regarding
anesthesia, because there may be reasons why the administration of a general
anesthetic did not breach any applicable standard of care. It might be that
there were emergency circumstances that arguably warranted general anesthesia
without Russell’s consent, or that a general anesthetic was administered
without Murphy’s actual knowledge at the time it was done. Under such
circumstances, expert testimony about the standard of care and breach of that
standard might be necessary at trial, yet if we were to accept Russell’s
cribbed interpretation of the term “health care liability claim,” her suit
would proceed without the threshold expert report contemplated by former
article 4590i. 

With regard to Russell’s DTPA claims, she alleges
that Dr. Murphy sedated her after he expressly represented and warranted that
he would not. In the procedural posture of this case, we are not called upon to
determine whether section 12.01 of former article 4590i bars the applicability
of the DTPA to these claims.[13]
The only question before us is whether Russell was required to file an expert
report in order to proceed with her suit.

We have held that representations like those
Russell has alleged “are nothing more than an attempt to recast [a] malpractice
claim as a DTPA action.”[14]
In Gormley v. Stover, the claimant
alleged that a dentist represented he could perform a bone graft with no
problems, represented that a skin graft would work as well as a bone graft, and
made other representations regarding her prognosis.[15]
We held that these allegations “all have to do with whether [the dentist’s]
selection of the surgical procedure and performance of it met the standard of
care for dentists in such circumstances.”[16]
Similarly, Russell’s allegations “all have to do with” whether the administration
of a general anesthetic under all the circumstances met the standard of care
for anesthesiologists. Accordingly, all of her claims, including her DTPA
claims, are “health care liability claims.” 

Because Russell’s suit asserted health care
liability claims, she was required to provide Murphy with an expert report in
order to proceed with those claims.[17]
Because Russell failed to do so within the statutory period,[18]
we reverse the court of appeals’ judgment without hearing oral argument[19]
and dismiss Russell’s suit.

 

Opinion delivered: July 1, 2005











[1] Act of May 5, 1995, 74th Leg.,
R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985,
985-87 (adding expert report requirement, at former Tex. Rev. Civ. Stat. art.
4590i, § 13.01(d)), repealed and recodified
as amended by Act of June 2, 2003, 78th Leg., R.S., ch.
204, §§ 10.01, 10.09, and 23.02 (a), (d), 2003 Tex. Gen. Laws 847, 864,
884, 898-899 (“House Bill 4”) (adopting chapter 74 of the Texas Civil Practice
and Remedies Code, applicable only to actions filed on or after September 1,
2003, and continuing prior law in effect for actions filed before that date)
(current version at Tex. Civ. Prac. & Rem. Code § 74.351 (“Expert
Report”)).





[2] 86 S.W.3d 745 (Tex. App.CDallas 2002).





[3] See
Tex. Bus. & Com. Code §§ 17.46,
17.50.





[4] Act of May 30, 1977, 65th Leg., R.S., ch. 817, ' 1.03(a)(4), 1977 Tex.
Gen. Laws 2039, 2041 (former Tex. Rev. Civ. Stat. art.
4590i, § 1.03(a)(4)), repealed by Act of
June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09,
2003 Tex. Gen. Laws 847, 884.





[5] 86 S.W.3d at 750.





[6] Act of May 30, 1977, 65th Leg., R.S., ch. 817, ' 1.03(a)(4), 1977 Tex.
Gen. Laws 2039, 2041 (former Tex. Rev. Civ. Stat. art.
4590i, § 1.03(a)(4)), repealed by Act of
June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09,
2003 Tex. Gen. Laws 847, 884.  See
also § 1.03 (a) (8) (defining “physician”). 
These provisions are recodified at Tex. Civ. Prac. & Rem.
Code § 74.001 (a) (13) and (23).





[7] Act of May 30, 1977, at § 1.03(a)(2) (current version at Tex.
Civ. Prac. & Rem. Code §
74.001 (a) (10)).





[8] Id. at ' 1.03(a)(6) (current version at Tex.
Civ. Prac. & Rem. Code §
74.001 (a) (19)).





[9] Act of May 5, 1995, 74th Leg.,
R.S., ch. 140, § 9, 1995 Tex. Gen. Laws 985, 986
(rewriting former Tex. Rev. Civ. Stat. art. 4590i, ' 13.01 (d)), repealed and recodified
as amended by Act of June 2, 2003, 78th Leg., R.S., ch.
204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem.
Code § 74.351). 





[10] See former art. 4590i § 13.01(r)(6) (current version at Tex.
Civ. Prac. & Rem. Code § 74.351 (r)(6)). 





[11] Miller ex rel.
Miller v. HCA, Inc., 118 S.W.3d 758, 767 (Tex. 2003).





[12] See Garland Cmty.
Hosp. v. Rose, 156 S.W.3d
541, 543 (Tex. 2004); MacGregor Med. Ass’n v. Campbell, 985
S.W.2d 38, 40 (Tex. 1998).





[13] Former section 12.01(a) provided: “Notwithstanding
any other law, no provisions of Sections 17.41-17.63, Business & Commerce
Code, shall apply to physicians or health care providers as defined in Section
1.03(3) of this Act, with respect to claims for damages for personal injury or
death resulting, or alleged to have resulted, from negligence on the part of
any physician or health care provider.”  See
former Tex. Rev.
Civ. Stat. art. 4590i, § 12.01, repealed and recodified
as amended by Act of June 2, 2003, 78th Leg., R.S., ch.
204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code § 74.004).





[14] Gormley v. Stover, 907 S.W.2d 448, 450 (Tex. 1995) (per curiam).  See
Earle v. Ratliff, 998 S.W.2d 882, 892-893  (Tex. 1999).





[15] Gormley, 907 S.W.2d at 449.





[16] Id. at 450.





[17] See former Tex.
Rev. Civ. Stat. art.
4590i, § 13.01(d)-(e)(3)), repealed and recodified as revised by Act of June 2, 2003, 78th
Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen.
Laws 847, 884 (current version at Tex.
Civ. Prac. & Rem. Code §
74.351).





[18] See art. 4590i, § 13.01(d),
(e). 





[19] See Tex.
R. App. P. 59.1.