**John W. MacPETE, Individually, and as Next Friend of J.M.M., Appellant**

**v.**

**Kristin E. BOLOMEY, the Holiner Psychiatric Group, and Columbia Hospital at Medical City of Dallas Subsidiary, L.P. d/b/a Medical City Dallas Hospital, Appellees.**

No. 05–04–01695–CV.

Court of Appeals of Texas, Dallas.

March 9, 2006.

Paul V. Storm, Dawn Jeanine Wolff, Storm LLP, Dallas, for appellant.

Edward P. Quillan, Quillan Law Firm, P.C., Marlow James Muldoon, Cooper & Scully, PC, Dallas, for appellees.

Before Justices WRIGHT, MOSELEY, and O'NEILL.

## OPINION

Opinion by Justice WRIGHT.

John W. MacPete, individually and as next friend of J.M.M., appeals the trial court's order dismissing his causes of action against Kristin Bolomey and The Holiner Psychiatric Group for his failure to timely file an expert report under the Texas Medical Liability and Insurance Improvement Act (the Act).[1] In two points of error, appellant contends the trial court erred by dismissing the suit because (1) Bolomey is not a "health care provider" within the meaning of the Act; and (2) his causes of action against Bolomey and Holiner for negligence are not within the scope of a "health care liability claim" under the Act. We overrule appellant's points of error and affirm the trial court's order.

## Background

Dr. Kendall Brown, a gastroenterologist, referred six-year old J.M.M. to Bolomey, a licensed psychologist employed by Holiner and under contract with Medical City, be-cause of a concern about J.M.M.'s recurrent anal infection and the possibility of sexual abuse as its cause. Catherine Melvin, J.M.M.'s mother, took J.M.M. to Bolomey, who saw him a total of seven times. Based upon these therapy sessions, Bolomey suspected that J.M.M. was a victim of sexual abuse and notified Child Protective Services (CPS). According to appellant, this triggered a chain of events that led to four CPS investigations, two criminal proceedings, and a second custody case—none of which substantiated the occurrence of any sexual abuse.

Appellant sued Bolomey, Holiner, and Medical City. Appellant alleged that Bolomey negligently failed to determine she had no right to treat J.M.M., because the divorce decree between appellant and Melvin prohibited J.M.M. from being treated by anyone other than a court-appointed mental health professional. Appellant also alleged that Bolomey negligently misdiagnosed J.M.M. as a sexual abuse victim. Appellant further alleged that Holiner was negligent in failing to train and supervise Bolomey properly and that Holiner was vicariously liable for Bolomey's negligence. Finally, appellant alleged that Medical City was negligent for failing to adequately supervise Bolomey and that it was vicariously liable for Bolomey's acts and omissions.

After appellant failed to file an expert report within the time limit required by the Act, Bolomey, Holiner, and Medical City filed motions to dismiss. Appellant then filed a motion to nonsuit all his claims under the Act, which the trial court granted. Neither the motion nor the order identified these claims. Following a hear-

---

1. The trial court also dismissed Columbia Hospital at Medical City of Dallas Subsidiary, L.P. d/b/a Medical City Dallas Hospital. Appellant does not challenge Medical City's dismissal on appeal and, thus, we limit our discussion to the propriety of dismissing Bolomey and Holiner.

ing, the trial court dismissed all claims against Bolomey, Holiner, and Medical City. This appeal, challenging the dismissal of appellant's claims against Bolomey and Holiner, followed.

### Discussion

In his first point of error, appellant argues that Bolomey, a psychologist, is not a covered "health care provider" under the Act. After reviewing the record and applicable law, we cannot agree.

"Health care liability claims" against "health care providers," as those terms are defined in the statute, are to be filed under the Act. TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon 2005). The claimant must serve each party an expert report that establishes liability and causation no later than 120 days after filing suit. *Id.* § 74.351(a). If an expert report is not served within that time period, on the motion of the affected health care provider, the court shall dismiss the claim with prejudice to the refiling of the claim. *Id.* § 74.351(b).

The Act defines "health care provider" as

any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: (i) a registered nurse; (ii) a dentist; (iii) a podiatrist; (iv) a pharmacist; (v) a chiropractor; (vi) an optometrist; or (vii) a health care institution.

*Id.* § 74.001(a)(12)(A). Subsection B(ii) adds that the "health care provider" also includes:

an *employee, independent contractor, or agent of a health care provider* or physi-

cian acting in the course and scope of the employment or contractual relationship.

*Id.* § 74.001(12)(B)(ii) (emphasis added).

■ To come within the scope of a covered "health care provider" under the Act, an "employee or agent" of a health care provider need not independently qualify as a listed health care provider. *See Henry v. Premier Healthstaff,* 22 S.W.3d 124, 127 (Tex.App.-Fort Worth 2000, no pet.) (collecting cases); *Ponce v. El Paso Healthcare Sys., Ltd.,* 55 S.W.3d 34, 37–38 (Tex. App.-El Paso 2001, pet. denied). In the latter case, Ponce sued the hospital-employer of a physical therapist, who allegedly injured Ponce. Ponce argued that for the Act to apply, both the employer and employee had to qualify as a "health care provider." The court rejected that argument, stating, "*nothing in the plain language of this definition* [of health care provider] *suggests that the officer, employee, or agent must also be a health care provider.*" *Ponce,* 55 S.W.3d at 37.

Here, the record shows that at the time Bolomey saw J.M.M., she was under contract with Medical City and the referral from Kendall Brown, M.D., was pursuant to that contract. Medical City was dismissed after appellant failed to file an expert report as required by the Act. In granting Medical City's motion, the trial court necessarily concluded that it was qualified as a "health care institution," and thus as a "health care provider," under the terms of the Act.[2] Appellant does not challenge those determinations.

■ Bolomey, as a contractor with Medical City, is covered under the Act for alleged causes of action that otherwise fall within the coverage of the Act. *See id.* at

---

2. The Act defines "health care institution" as including hospitals. TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(11)(G), (H). The definition of "health care provider" includes an institution licensed to provide health care. *Id.* § 74.001(a)(12)(A).

37–38. That is, even assuming that as a psychologist Bolomey does not independently qualify as a "health care provider" under the Act, in this case she is covered under the Act as an "employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship." *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(12)(B)(ii). We overrule appellant's first point of error.

In his second point of error, appellant contends his allegation that Holiner failed to properly train and supervise Bolomey in the performance of her job and Holiner's negligence under the doctrine of respondeat superior are not "health care liability claims" within the meaning of the Act. According to appellant, these claims are not health care liability claims because the negligence alleged—Bolomey's failure to ascertain that the divorce decree prohibited her from even treating J.M.M.—does not pertain to actual health care treatment. We cannot agree.

"Health care" is defined as

any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.

*Id.* § 74.001(a)(10).

A "health care liability claim" is defined as

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant,

whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* 74.001(a)(13).

■ The courts have repeatedly thwarted plaintiffs' attempts to avoid the Act by recasting their causes of action as something other than health care liability claims. *See, e.g., MacGregor Med. Ass'n v. Campbell,* 985 S.W.2d 38, 40 (Tex.1998). To determine whether a cause of action fits the definition of a health care liability claim, we look at the underlying nature of the claim. *See Sorokolit v. Rhodes,* 889 S.W.2d 239, 242 (Tex.1994). The complained-of act or omission must be an inseparable part of the rendition of medical services. *Id.* (citing *Walden v. Jeffery,* 907 S.W.2d 446, 448 (Tex.1995)).

■ A cause of action against a health care provider is a health care liability claim under the Act if it is based on a claimed departure from an accepted standard of medical care, health care, or safety of the patient, whether the action sounds in tort or contract. *Diversicare Gen. Partner, Inc. v. Rubio,* 2005 WL 2585490, *3 (Tex.2005). In *Ponce,* the plaintiff asserted that her claim against the hospital for negligent training and supervision of its therapist-employee was not a "health care liability claim." *Ponce,* 55 S.W.3d at 38–39. Rejecting that argument, the court stated,

the proper treatment of such injuries and the training and supervision of occupational therapists to provide the required care is necessarily governed by an acceptable standard of medical care, health care, or safety, and expert testimony will be required to establish the appropriate standard of care. Because her claim is *based upon an alleged departure from accepted standards of*

*medical care, health care, or safety,* Ponce's suit against Columbia is a "health care liability claim."

*Id.* at 39 (emphasis added).

In *Murphy v. Russell,* 167 S.W.3d 835 (Tex.2005), the supreme court discussed the interplay between the standard of care and the Act's threshold requirement that an expert report be filed in order to maintain a cause of action. In that case, Russell filed a suit for battery against an anesthesiologist who administered general anesthesia without her consent. *Id.* at 837. She argued that the Act did not apply, because no expert testimony on a breach of a "standard of medical care, health care, or safety" was required on the issue of battery. *Id.* The supreme court disagreed, noting that there may be reasons for providing treatment without specific consent and the existence of such reasons is necessarily the subject of expert testimony. *Id.* at 838. The supreme court explained that "the Legislature intended health care liability claims to be scrutinized by an expert or experts before the suit can proceed." *Id.* The court went on to state that even if expert testimony is ultimately not required at trial, this does not alter the threshold requirement of an expert report:

> [T]he Legislature envisioned that discovery and the ultimate determination of what issues are submitted to the factfinder should not go forward unless at least one expert has examined the case and opined as to the applicable standard of care, that it was breached, and that there is a causal relationship between the failure to meet the standard of care and the injury, harm, or damages claimed. The fact that in the final analysis, expert testimony may not be necessary to support a verdict *does not mean*

*the claim is not a health care liability claim.*

*Id.* (emphasis added).

 Here, appellant maintains Bolomey's alleged negligence in failing to discover the court order did not occur "during" J.M.M.'s treatment and thus was not "health care" under the Act, i.e., "any act or treatment ... for, to, or on behalf of a patient during the patient's medical care [or] treatment." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(10). However, the record shows that Bolomey's treatment of J.M.M. directly resulted from a referral by Kendall Brown, M.D., a gastroenterologist, who called Bolomey and requested that she see J.M.M. within twenty-four hours for the purpose of determining whether sexual abuse was the cause of J.M.M.'s medical condition (a recurring anal infection). Thus, we conclude Bolomey's services were an inseparable part of the treatment of J.M.M.'s medical condition and that those services fall within the ambit of "health care," as defined in the Act. Further, Bolomey's allegedly negligent acts and omissions fall within the definition of a health care liability claim, as a "claimed departure from accepted standards of medical care, or health care, or safety or professional ... services directly related to health care." *See id.* 74.001(a)(13). Appellant's negligence claim is not grounded solely on Bolomey's failure to discover the court order prohibiting her from treating J.M.M. Appellant's recovery turns on Bolomey's subsequent treatment of J.M.M.; her alleged misdiagnosis of J.M.M. as a victim of sexual abuse; and her subsequent call to CPS, from which appellant's alleged damages flowed. Thus, appellant's claim necessarily invokes the issue of whether Bolomey's treatment of J.M.M. fell below the standard for her profession. As such, it is a "health care liability claim" under the Act. At a mini-

mum, the complaint in this case falls within the ambit of a claimed departure from accepted standards for professional services that were "directly related" to health care. *See id.*

 Accordingly, the claim that Holiner was negligent in training and supervising Bolomey also constitutes a "health care liability claim." Following the rationale in *Ponce*, we conclude the proper diagnosis and treatment of J.M.M.'s alleged injuries—and the training and supervision of a psychologist to provide appropriate care—necessarily implicates the acceptable standard of "health care, or safety or professional care within the health care industry," and expert testimony will be required to establish the appropriate standard of care. *Ponce*, 55 S.W.3d at 38–39. Moreover, as the *Murphy* court instructs, even if expert testimony on the proper standard is not required at trial on all aspects of the claim, the Act requires the threshold expert report in this case, not as a necessity for proof, but as a threshold showing to substantiate the claim. *See Murphy*, 167 S.W.3d at 838. We overrule appellant's second point of error.

We affirm the trial court's order granting Bolomey and Holiner's motion to dismiss.