
### NO. 02-10-00162-CV

TTHR, L.P. D/B/A                                     APPELLANT
PRESBYTERIAN HOSPITAL OF
DENTON

V.

AMANDA COFFMAN                                         APPELLEE

------------

## FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

TTHR, L.P. d/b/a Presbyterian Hospital of Denton (Presbyterian) appeals the denial of its motion to dismiss filed pursuant to Texas Civil Practice and Remedies Code section 74.351(b). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon 2011). Presbyterian asserts that the suit filed against it by Appellee Amanda Coffman was a health care liability claim, subject to the requirements of chapter 74 of the civil practice and remedies code. Because we

agree with Presbyterian that Coffman's claim is a health care liability claim, we reverse the trial court's order, render judgment dismissing Coffman's claims against Presbyterian, and remand the case for a determination by the trial court of costs and attorney's fees to be awarded to Presbyterian.

**Background**

Coffman sought treatment at Presbyterian on November 5, 2007. As part of her treatment, she submitted a urine sample for testing. Presbyterian staff released the laboratory report on the sample to the University of North Texas Police Department, who then released it to the University of North Texas, where Coffman was a student. The laboratory report indicated a violation of the school's code of student conduct, and Coffman was suspended and removed from student housing.

Coffman claims the release of her test results was negligent and a violation of section 159.002 of the occupations code, which designates medical records as confidential and privileged. *See* Tex. Occ. Code Ann. § 159.002 (Vernon 2004). Coffman filed suit against Presbyterian and the University of North Texas. The University is not a party to this appeal.

Approximately five months after Coffman filed her petition, Presbyterian moved for dismissal of Coffman's claims against it, arguing that Coffman failed to timely serve an expert report as required by chapter 74 of the civil practice and remedies code, also known as the Texas Medical Liability Act (TMLA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. Coffman argued that a report is

2

unnecessary because the TMLA only applies to health care liability claims and her claims are not health care liability claims. The trial court denied Presbyterian's motion to dismiss. Presbyterian filed this appeal.

**Standard of Review**

Although appellate courts review a trial court's decision to grant or deny a motion to dismiss for failure to timely serve a section 74.351(a) expert report for an abuse of discretion, *see Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006), the issue presented here requires a determination of whether the TMLA applies to Coffman's claims. We therefore review the applicability of the TMLA de novo. *See Marks v. St. Luke's Episcopal Hosp*., 319 S.W.3d 658, 663 (Tex. 2010); *Fudge v. Wall*, 308 S.W.3d 458, 460 (Tex. App.—Dallas 2010, no pet.).

Whether a claim is a health care liability claim depends on the underlying nature of the claim being made. *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). A party may not avoid the requirements of the TMLA through artful pleading. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005); *Garland Cmty. Hosp*., 156 S.W.3d at 543. Courts must look to the act or omission that forms the basis of the complaint to determine whether it is either an inseparable part of the rendition of health care services or based on a breach of the standard of care applicable to health care providers. *Garland Cmty. Hosp*., 156 S.W.3d at 544. If the factual allegations are related to medical treatment provided by the defendant and constitute an inseparable part of the defendant's rendition of medical services, then the plaintiff's claim is a health

3

care liability claim subject to the requirements of the TMLA. *Marks*, 319 S.W.3d at 664.

## Discussion

The sole issue before us is whether a claim for the wrongful release of medical information is a health care liability claim under the TMLA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001–.507 (Vernon 2011). If it is a health care liability claim, Coffman was required to serve an expert report within 120 days of filing her original petition. *See id.* § 74.351. The TMLA requires the dismissal of the claim if a report is not served, and the statute does not grant the court the ability to offer an extension for failing to serve a report within the statutory timeframe. *See Maris v. Hendricks*, 262 S.W.3d 379, 384 (Tex. App.—Fort Worth 2008, pet. denied) (noting that statutory extension to cure a deficient report does not apply when no report is served). The parties agree that if it is not a health care liability claim, Coffman was not required to serve such a report.

Coffman argues that no report is necessary because she filed a common law claim of negligence and a claim under the occupations code. As we stated above, we are required to look at the underlying act or omission forming the basis of the complaint. *See Garland Cmty. Hosp.*, 156 S.W.3d at 543–44. If the claim falls under the definition of a health care liability claim, it is subject to the TMLA, regardless of how it was pleaded. *Id*. at 544.

4

TMLA defines "health care liability claim" as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). "Health care" is defined to mean "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id*. § 74.001(a)(10). "Professional or administrative services" is defined as "those duties or services that a physician or health care provider is required to provide as a condition of maintaining the physician's or health care provider's license, accreditation status, or certification to participate in state or federal health care programs." *Id*. § 74.001(a)(24).

**A. Professional or Administrative Services Directly Related to Health Care**

Health care providers are required under a number of statutes to maintain the confidentiality of patient records. *See, e.g.*, Tex. Health & Safety Code Ann. §§ 181.152 (Vernon 2010) (disallowing disclosure of protected health information for marketing purposes without patient's consent), 241.155 (Vernon 2010) (requiring a hospital to "adopt and implement reasonable safeguards for the security of all health care information it maintains"); Tex. Occ. Code Ann. § 159.002(b) (requiring records of treatment to be "confidential and privileged

5

and may not be disclosed"); 42 C.F.R. § 482.13(d) (2004) (making confidentiality of records a condition of participation in Medicare and Medicaid); 42 C.F.R. § 482.24 (2004) (same). Failure to do so can result in the loss of the hospital's license, accreditation, and ability to participate in state or federal health care program. *See, e.g.*, Tex. Health & Safety Code Ann. §§ 181.202 (allowing for the revocation of provider's license for a pattern or practice of violating section 181.152), 181.203 (allowing for the exclusion of a hospital from participating in state-funded health care programs for a pattern or practice of violating section 181.152), 241.053 (allowing for the denial, suspension, or revocation of a hospital's license for violating section 241.155); 25 Tex. Admin. Code § 133.121 (2007) (Tex. Dep't of State Health Servs., Enforcement Action) (allowing for the denial, suspension, or revocation of a hospital's license for violating section 241.155); 42 C.F.R. §§ 482.13(d) (conditioning participation in Medicare and Medicaid on the protection of patient's right to confidentiality); 482.24 (conditioning participation in Medicare and Medicaid on maintaining patient's medical records). Because confidentiality of records is required "as a condition of maintaining the . . . health care provider's license, accreditation status, or certification to participate in state or federal health care programs," the duty to maintain the confidentiality of patient records is a professional or administrative service as defined by the TMLA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(24) (defining professional or administrative services).

The duty of confidentiality is also directly related to health care based on its definition in the TMLA. *See* Tex. Civ. Prac. & Rem. Code. Ann. § 74.001(a)(10) (defining "health care"). A patient's medical records are required to be created during the patient's care. *See* 22 Tex. Admin. Code § 165.1(a) (2010) (Tex. Med. Board, Medical Records). They must memorialize each patient encounter, including all assessments, impressions, and diagnoses. *Id*. The duty to create records is directly related to the acts performed by the health care provider or treatments received by the patient. The duty to maintain the confidentiality of those records is inseparable from the duty to maintain the records themselves. Therefore, the duty to create and maintain the confidentiality of medical records is directly related to the patient's health care. *Cf. Fudge*, 308 S.W.3d at 463–64 (holding that letter written by counselor to social worker regarding counselor's "professional assessment and evaluation" of child was "clearly" related to and "inseparable from" treatment of child).

Coffman argues that the injury did not occur *during* her medical care, as required by the TMLA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(1). However, the statute does not mandate that the injury itself occur during the patient's medical care, just that it be directly related to acts that occurred during the patient's health care. *Id*. § 74.001(a)(10), (13) (defining "health care liability claim" as a "claimed departure from accepted standards of . . . professional or administrative services directly related to ['any act or treatment performed or furnished . . . for, to, or on behalf of a patient during the patient's medical care']").

7

Coffman's urine analysis occurred during, and as a part of, her care at Presbyterian. The results of the analysis were recorded in her medical records, as a professional or administrative service directly related to the care she received. The duty of confidentiality arises during the patient's medical care and must be maintained as long as the provider possesses the medical records. *See*, *e.g.*, Tex. Occ. Code. Ann. § 159.002(d) (stating that confidentiality "continues to apply . . . regardless of when the patient receives the services of a physician"); 22 Tex. Admin. Code § 165.1(b) (2010) (Tex. Med. Board, Medical Records) (requiring physicians to maintain medical records for seven years and destruction of such records "shall be done in a manner that ensures continued confidentiality"); 42 C.F.R. § 482.24 (requiring medical records to be retained for five years as a condition for participating in Medicare and Medicaid). Providers owe the duty of confidentiality to their patients as part of the care they provide. *See* statutes requiring health care providers to keep patient's records confidential cited *supra* Part A. We therefore conclude that a violation of a patient's confidentiality is actionable as a health care liability claim regardless of whether it occurred while the patient was in the treatment room or after she had left the facility.

Coffman also argues that it is "inconceivable" that the legislature intended to include breaches of confidentiality under the TMLA when one considers the purpose of the statute. We agree with Coffman that the purpose of original statute was to address medical malpractice claims. *See Marks*, 319 S.W.3d at

8

663 (noting that article 4590i, the predecessor to the current chapter 74 of the civil practice and remedies code, was enacted to "remedy a medical malpractice insurance crisis"). However, the statute has been expanded by the legislature since its enactment, and we must give effect to those amendments. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 892 (Tex. 2000) ("This Court's ultimate goal in construing a statute is to give effect to the Legislature's intent as expressed in the language of the statute."); *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) (noting that courts must "give effect to all the words of a statute"). The legislature added and defined the phrase "professional or administrative services," and we will not now read it out of the statute. There can be no "administrative service" more directly related to the rendition of health care than the memorialization of that care. And the duty to maintain the confidentiality of those records cannot be separated from the duty to maintain them. We therefore hold that the wrongful release of medical information is a departure from accepted standards of professional or administrative services directly related to health care under the TMLA.

**B. Injury or Death**

Coffman argues that the TMLA does not apply because "injury" as used in the statute can only be understood as meaning physical injury. Coffman relies on *Thomas v. State*, 923 S.W.2d 645 (Tex. App.—Houston [1st Dist.] 1995, no pet.), and *Pallares v. Magic Valley Electric Co-op., Inc.*, 267 S.W.3d 67 (Tex. App.—Corpus Christi 2008, pet. denied).

9

*Thomas* involved a felony conviction for failure to stop and render aid. 923 S.W.2d at 647. The statute required the "driver of a vehicle involved in an accident resulting in injury to or death of any person" to return to the scene of the accident.[1] Act of 1947, 50th Leg., R.S., ch. 421, 1947 Tex. Gen. Laws 967, *repealed by* Act of April 21, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1871. The court determined that "injury" in the statute meant "personal injury." *Thomas*, 923 S.W.2d at 647–48.

The statute in *Thomas* is unanalogous to the TMLA for many reasons. First, the section of the code in *Thomas* was entitled "Accidents involving death or personal injuries." *Id*. at 647. Second, the section was replete with other references to "personal injury," and it assumed that a person was physically struck by a vehicle and required the driver to render aid to the person, including taking the victim to a hospital or doctor. *Id*. And third, it further required the State, in prosecuting the driver under the statute, to prove that the injury was to "any part of the human body" and that it "necessitate[d] treatment." *Id*.

None of the indications present in *Thomas* that led the court to conclude that "injury" meant "personal injury" are present in the TMLA. The statute in *Thomas* required an underlying tort. *Id*. The TMLA allows for recovery regardless of "whether the claimant's claim or cause of action sounds in tort or in contract." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). The statute in

---

[1]The current version of the statute appears in the transportation code. *See* Tex. Transp. Code Ann. § 550.021 (Vernon Supp. 2010).

*Thomas* made repeated references to "personal injury." 923 S.W.2d at 647. The only reference to physical injury to which Coffman points is in the definition of claimant, where it states, "All persons claiming to have sustained damages as the result of the bodily injury or death of a single person are considered a single claimant." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(2). However, the sentence does not function to limit claimants to patients, *see, e.g.*, *Fudge*, 308 S.W.3d at 464 (holding that father's and grandmother's claims for libel were health care liability claims); *Groomes v. USH of Timberlawn, Inc.*, 170 S.W.3d 802, 804 (Tex. App.—Dallas 2005, no pet.) (holding that patient's mother's claims for her own emotional distress were health care liability claims), much less to limit claimants to patients with physical injuries. We therefore do not find *Thomas* instructive on the present issue.

In *Pallares*, the Corpus Christi Court of Appeals held that a health care insurance provider was not a claimant under the TMLA because "it did not undergo treatment by Pallares." 267 S.W.3d at 73. The court went on to state, without support, "Moreover, [the insurance provider] does not fit within the definition of a claimant as provided in the [TMLA] because the record does not demonstrate that any person directly sustained bodily injury or death proximately caused by the health care treatment provided by Pallares." *Id*. The court then returned to its analysis regarding the insurance provider's status as a non-patient. The court mentions "bodily injury" in response to the statute's language regarding, as stated above, a non-patient's ability to seek redress when its

11

injuries result from someone else's "bodily injury or death." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(2). That is, the court was addressing the insurance provider's standing absent any subrogation rights. *See Pallares*, 267 S.W.3d at 73 n.5 (commenting, in reference to the above-quoted sentence, on the lack of evidence in the record regarding the insurance provider's subrogation rights with respect to the patient). Further, the court did not distinguish its facts from the case the insurance provider relied upon on the basis that the other case involved nonphysical injuries. *Id*. at 73–74 (distinguishing *Inst. for Women's Health, P.L.L.C. v. Imad*, No. 04-05-00555-CV, 2006 WL 334013, at *2 (Tex. App.—San Antonio Feb. 15, 2006, no pet.) (mem. op.) (noting that the claimants sought damages for mental anguish, loss of companionship and society, and medical bills)).[2]

---

[2]Coffman also points to *Benson v. Vernon*, 303 S.W.3d 755, 759 (Tex. App.—Waco 2009, no pet.), to support her suggested interpretation of *Pallares*. In *Benson*, the Waco Court of Appeals held that the plaintiff's allegation of "alteration and fabrication of medical records" was "not a health care liability claim required to be addressed in an expert report." *Id*. The court offered no analysis to support its distinction of that claim from the other allegations made regarding the health care that the plaintiff received. Chief Justice Gray, in his concurrence and dissent, specifically disagreed with the majority's holding that alteration and fabrication of medical records are not health care liability claims. *Id.* at 767 (Gray, C.J., concurring and dissenting) ("There must be a standard in the medical industry for the extent and nature of what gets entered by the physician or health care provider in the medical records of a patient."). Further, we are concerned that *Benson* runs afoul of the supreme court's holding in *Yamada v. Friend*, No. 08-0262, --- S.W.3d ---, 2010 WL 5135334, at *4–5 (Tex. Dec. 17, 2010) (holding that claims based on the same facts as health care liability claims cannot be split because "then the TMLA and its procedures and limitations will effectively be negated"). We therefore do not find *Benson* persuasive on this issue.

12

There have been many instances in which nonphysical injuries have resulted in health care liability claims. *See, e.g., Murphy v. Russell*, 167 S.W.3d 835, 837 (Tex. 2005) (sedation contrary to instructions); *Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex. 1995) (ill-fitting dentures); *Armstrong v. Robinsons*, No. 14-08-01077-CV, 2010 WL 4817100, at *2 (Tex. App.—Houston [14th Dist.] Nov. 23, 2010, no pet.) (mem. op.) (ill-fitting dentures); *Fudge*, 308 S.W.3d at 460 (libel); *Sloan v. Farmer*, 217 S.W.3d 763, 768 (Tex. App.—Dallas 2007, pet. denied) (employment termination); *Imad*, 2006 WL 334013, at *2 (mental anguish); *MacPete v. Bolomey*,185 S.W.3d 580, 582, (Tex. App.—Dallas 2006, no pet.); CPS investigations, criminal proceedings, and a child custody case); *Groomes*, 170 S.W.3d 802, 804 (false imprisonment); *Smalling v. Gardner*, 203 S.W.3d 354, 365 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (kidnapping, false imprisonment, child abduction, fraud, breach of contract, deceptive trade practices, and conspiracy). We are not persuaded that all of these cases were incorrectly decided. We therefore refuse to add the word "physical" to the injury requirement of the TMLA.

## C. Rendering an Opinion

Lastly, Coffman argues that an expert report here would require the expert to render a legal opinion and, because the statute requires a physician to render the expert opinion, it cannot be created. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.402, 74.403(a).

13

The TMLA requires a claimant, within 120 days of filing her petition, to serve an expert report on each party. *Id*. § 74.351(a). The expert report must provide the expert's opinion regarding "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed." *Id*. § 74.351(r)(6). An expert may only provide an opinion on the standard of care if he

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id*. § 74.402(b). The first requirement of subsection 74.402(b) notably applies only "if the defendant health care provider is an individual." *Id*. Coffman did not sue any individual providers, but only the hospital. Therefore, a qualified expert in this case would be an individual who has knowledge of the accepted standards of care for providers regarding the confidentiality of medical records and the

necessary training or experience to offer an expert opinion. *Id*. § 74.402(b)(2)–(3).[3]

We first note that the expert report requirement of the TMLA is a procedural requirement that all claimants must complete in order to continue with their claims. The supreme court has said that the expert report

> does not establish a requirement for recovery. It may be that once discovery is complete and the case is tried, there is no need for expert testimony . . . . But the Legislature envisioned that discovery . . . should not go forward unless at least one expert has examined the case . . . . The fact that in the final analysis, expert testimony may not be necessary to support a verdict does not mean the claim is not a health care liability claim.

*Murphy*, 167 S.W.3d at 838 (commenting on former revised civil statutes article 4590i, the predecessor to chapter 74). Coffman's claims are based on a violation of a standard of care applicable to health care providers. These claims necessitate a threshold examination by an expert on that standard of care and a determination by that expert that Presbyterian fell below that standard and proximately caused Coffman's injuries. The expert report required at the commencement of the litigation provides the validation necessary to justify proceeding with the lawsuit.

---

[3]Section 74.351(r)(5)(C) requires a physician to testify as to causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C). However, the statute allows for a plaintiff to meet the statute's requirements through serving separate reports by different experts on liability and causation. *See id*. § 74.351(i) ("Nothing in this section shall be construed to mean that a single expert must address . . . both liability and causation issues for a physician or health care provider.").

15

As to the issue of causation, Coffman points out that the facts of this case would require a physician to opine on what civil damages Coffman suffered because of the disclosure of her health care information. *See* Tex. Occ. Code Ann. § 159.009(b) (Vernon 2004) ("The aggrieved person may prove a cause of action for civil damages."). Because it seems absurd to require a physician to testify as to civil damages, Coffman argues that her claim cannot therefore be a health care liability claim.

The legislature has prescribed that it is necessary for a physician to opine as to causation of damages. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C). For this court to agree with Coffman's argument, made without citation to authority, that the requirement is "absurd," and therefore should transform a clear health care liability claim into another category that does not require an expert report, would violate legislative intent. *See Marks*, 319 S.W.3d at 673 (Johnson, J., concurring) ("If policy considerations support limiting or excluding subcategories of claims when the unambiguous statutory language includes the overall category . . . , then incorporating those exclusions into the statute is a Legislative prerogative, not a judicial one."). The inclusion of "professional or administrative services" to the definition of a health care liability claim may have created some arguably odd procedural demands for some claims. Nevertheless, this requirement does not make those claims something other than health care liability claims. In *Marks*, for instance, the plaintiff's expert physician opined on the proper maintenance and construction of a hospital bed.

16

*Id*. at 671 (Johnson, J., concurring). It is unusual for a physician to render such an opinion, but in that case, it was required. *See id*. at 664 (holding that plaintiff's claim was a health care liability claim and required an expert report). As we noted above, recasting a claim as something other than a health care liability claim does not excuse the plaintiff from meeting the requirements of the TMLA. *See Diversicare*, 185 S.W.3d at 854; *Garland Cmty. Hosp*., 156 S.W.3d at 543. An expert report on causation written by a physician is one of those requirements, and Coffman failed to meet it.

Coffman further argues that an expert rendering an opinion on the standard of care could only know "under what circumstances confidential patient information can be disclosed" by reading and interpreting the statute and legal commentary, which would amount to a legal opinion. Coffman fails to recognize in her argument that the duty of confidentiality is a requirement of a health care provider's license and accreditation and therefore all providers are expected to know the rules and regulations regarding dissemination of protected patient information.[4] *See* statutes conditioning licenses, accreditation, or participation in

---

[4]Professional medical associations like the American Medical Association require their members to uphold ethical codes, which include the pledge to keep medical records confidential. *See* AMA Council of Ethical & Judicial Affairs, Formal Op. 7.025 (1999) ("Physicians have a responsibility to be aware of the appropriate guidelines in their health care institution, as well as the applicable federal and state laws."); *see also* AMA CEJA, Access to Medical Records by Non-Treating Medical Staff 1–2 (1999), *available at* http://www.ama-assn.org/ama1/pub/upload/mm/369/ceja_6a99.pdf (noting that the American Hospital Association guidelines state that "all individuals who use or receive

state or federal health care programs on the continued practice of keeping medical information confidential cited *supra* Part A. This court has noted before that "'there are certain standards of medical care that apply to . . . any medical doctor.' If the subject matter is common and equally recognized and developed in all fields of practice, any physician familiar with the subject may testify as to the standard of care." *Menefee v. Ohman*, 323 S.W.3d 509, 514 (Tex. App.—Fort Worth 2010, no pet.) (citing *Blan v. Ali*, 75 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.)). The required expert opinion in this case would be on a standard of care that is specialized and applicable to health care providers. When and to whom to release medical information necessarily involves professional judgment. Thus, we do not agree with Coffman that to require an expert opinion on a standard of care imposed on all health care providers would be a "tortured and absurd construction" of the TMLA. Because the standard of care regarding confidentiality is a standard that applies to all health care providers and because health care providers are expected to know the laws applicable to their profession, any otherwise qualified expert could offer testimony on the standard of care owed to Coffman. Because the report is possible and necessary, we sustain Presbyterian's sole issue.

## Conclusion

information from the medical record are responsible, in part, for ensuring the confidentiality of that information").

Having sustained Presbyterian's sole issue, we reverse the trial court's order and render judgment dismissing Coffman's claims against Presbyterian. The case is remanded to the trial court for further proceedings consistent with this opinion as to Presbyterian's claim for attorney's fees and costs.

LEE GABRIEL
JUSTICE

PANEL: GARDNER, MEIER, and GABRIEL, JJ.

MEIER, J., filed a dissenting opinion.

DELIVERED: March 17, 2011

19


**NO. 02-10-00162-CV**

TTHR, L.P., D/B/A PRESBYTERIAN                                         APPELLANT
HOSPITAL OF DENTON

V.

AMANDA COFFMAN                                                         APPELLEE

----------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

----------

## DISSENTING OPINION

----------

I dissent because I disagree with the majority's conclusion that Coffman's claim is a health care liability claim. The gravamen of the claim and the injury- or damage-causing event is the release by Presbyterian of the confidential results of Coffman's urine test to the University of North Texas Police Department, ultimately resulting in her dismissal from the university. I do not believe that the unauthorized release of the confidential information meets the requirement articulated by Justice Medina in *Marks v. St. Luke's Episcopal Hospital*, stating

Whether the underlying claim involves a health care provider's negligent act or omission, or the patient's exposure to some other safety risk, the relationship between the injury causing event and the patient's care or treatment must be substantial and direct for the cause of action to be a health care liability claim under the MLIIA.

319 S.W.3d 658, 664 (Tex. 2010). Because the majority concludes otherwise, I

respectfully dissent.


                                        BILL MEIER
                                        JUSTICE

DELIVERED: March 17, 2011