# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00081-CV

**Access Orthodontics of East 7th Street, P.A., Appellant**

**v.**

**Miriam Jaimes, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-14-000189, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Miriam Jaimes sued Access Orthodontics of East 7th Street, P.A. (Access) in connection with orthodontic services and goods. Access moved to dismiss the suit on the ground that Jaimes's claims, although pleaded as claims under the Deceptive Trade Practices Act (DTPA), are actually health care liability claims and that Jaimes failed to serve an expert report as required by the Texas Medical Liability Act. *See* Tex. Civ. Prac. & Rem Code § 74.351. The trial court denied the motion, and Access filed this interlocutory appeal. *See id.* § 51.014(a)(9). Because we agree that Jaimes's claims are health care liability claims under the Act, we will reverse the trial court's judgment and remand the case for a determination of attorney's fees and for dismissal of Jaimes's suit.

**FACTUAL AND PROCEDURAL BACKGROUND**

According to her petition, Jaimes entered into an agreement with Access for braces and orthodontic services totaling $4,000. Jaimes paid $1,000 as a down payment for the braces and set up a payment schedule for the remaining balance. Upon completing payment and after wearing the braces for the prescribed period of time, Jaimes scheduled an appointment for removal of her braces. Access cancelled this appointment and continued to cancel subsequent scheduling for removal of the braces. Jaimes later paid for another orthodontist to remove the braces.

Jaimes sued Access under the DTPA, pleading for recovery of the $315 cost to remove the braces, attorney's fees, and mental anguish damages. In its answer, Access asserted that Jaimes's claims were not DTPA claims at all, but instead were health care liability claims governed by the Texas Medical Liability Act. *See id*. §§ 74.001-74.507. Access later filed a motion to dismiss pursuant to section 74.351(b) of the Act, asserting that Jaimes had failed to timely file an expert report as required by the Act. *See id*. § 74.351.[1] After a hearing on the motion to dismiss, the trial court denied Access's motion.

---

[1] Section 74.351of the Act states:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

Tex. Civ. Prac. & Rem. Code § 74.351(a). If an expert report is not served within the prescribed period of time, the physician or health care provider may seek dismissal of the claim. *Id*. § 74.351(b).

## STANDARD OF REVIEW

We review a trial court's order granting or denying a motion to dismiss pursuant to section 74.351(b) of the Act under an abuse-of-discretion standard. *PM Mgmt.-Trinity NC, LLC v. Kumets*, 368 S.W.3d 711, 720 (Tex. App.—Austin 2012), *aff'd in part, rev'd on other grounds*, 404 S.W.3d 550 (Tex. 2013). However, the question of whether a cause of action is a health care liability claim is a question of law, to which we apply a de novo standard of review. *Texas W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012).

## DISCUSSION

In its sole issue on appeal, Access asserts that the trial court erred in denying its motion to dismiss because Jaimes's claims are health care liability claims for which she failed to file an expert report as required by the Act. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b). In response, Jaimes contends that her claims are not health care liability claims because they do not sound in negligence and that, as a result, no expert report was required. Because it is undisputed that Jaimes did not serve an expert report, resolution of this appeal turns on whether Jaimes's claims qualify as health care liability claims under the Act.

The Texas Supreme Court has recognized that a "health care liability claim" consists of three elements:

> First, a physician or health care provider must be the defendant. Second, the suit must be about the patient's treatment, lack of treatment or some other departure from accepted standards of medical care or health care or safety. And third, the defendant's act, omission or other departure must proximately cause the patient's injury or death.

3

*Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 662 (Tex. 2010); *see also* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (definition of health care liability claim). A claim against a physician or health care provider that implicates the defendant's conduct during the course of the patient's care, treatment, or confinement is presumably a health care liability claim. *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012). In this case, there is no dispute that Access is a health care provider, and therefore only the second and third elements are at issue.[2]

***Nature of the Claim***

To satisfy the second element of a health care liability claim, "the suit must be about the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care or health care or safety." *Marks*, 319 S.W.3d at 662. The Act defines health care as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code § 74.001(a)(10).

To determine whether Jaimes's claims satisfy the second element, we must examine the underlying nature of the pleadings and are not bound by the form of the pleadings filed by Jaimes, nor her characterization of her claims. *See Marks*, 319 S.W.3d at 658; *see also Walden v. Jeffery*, 907 S.W.2d 446, 447-48 (Tex. 1995) (holding that health care liability claim against dentist for statements regarding fit of dentures could not be recast as DTPA claim); *Lopez v. Osuna*,

---

[2] The Act defines a health care provider as including any professional association "chartered by the State of Texas to provide health care, including: (ii) a dentist." *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(A) (internal citations omitted). Access is a professional association of orthodontists, a type of dentist, chartered to provide dental care to patients.

453 S.W.3d 60, 66-67 (Tex. App.—San Antonio 2014, no pet.) (holding that DTPA claims based on failure to provide promised labor and delivery services were health care liability claims). A plaintiff's artful pleadings do not alter the underlying nature of the claim. *Yamada v. Friend*, 335 S.W.3d 192, 196-97 (Tex. 2010); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005).

In her petition, Jaimes contends that Access failed to remove her braces at the prescribed time, repeatedly cancelled and made excuses to avoid removal of the braces, and ultimately failed to deliver the services for which she had already paid. Although Jaimes contends that her claims do not sound in negligence, upon considering the underlying nature and gravamen of Jaimes's pleadings, we conclude that her complaint concerns a "lack of treatment," namely, the failure to remove her braces in a timely manner, and that this omission implicates "a departure from accepted standards of medical care." *See Loaisiga*, 379 S.W.3d at 255 ("[C]laims premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care . . . are [health care liability claims], regardless of whether plaintiff alleges the defendant is liable for breach of any of those standards."). Jaimes was a patient receiving medical treatment from orthodontists at Access, and the removal of her braces was inseparable from that treatment. *See Diversicare*, 185 S.W.3d at 848 ("A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services."); *Walden*, 907 S.W.2d at 448 (holding that providing dentures was inseparable from health care provided to patient as dental services). Further, whether Jaimes's braces had fully treated the condition for which she sought care and consequently whether removal of her braces was proper are determinations that are not within the common

5

knowledge of the general public. *See Diversicare*, 185 S.W.3d at 851 (explaining that issues regarding safety of patients in nursing home were not "within common knowledge of the general public"). As a result, Jaimes's claim that Access's orthodontists failed to timely remove her braces satisfies the second element of a health care liability claim.

*Injury*

The third element of a health care liability claim requires that "the defendant's act, omission or other departure must proximately cause the patient's injury or death." *Marks*, 319 S.W.3d at 662. The term "injury" is not defined in the Act, and thus it must be assigned "such meaning as is consistent with the common law." *See* Tex. Civ. Prac. & Rem. Code § 74.001(b). Accordingly, in *Kumets*, this Court examined the term "injury" within the context of the statute and concluded that a health care liability claim requires "more than mere out-of-pocket economic harm." 368 S.W.3d at 719. Instead, the term "injury" would seem to "carry with it the implication that the alleged deviation from an accepted standard of care must cause the plaintiff to suffer some personal injury, whether physical, mental, or emotional." *Id.* at 718. That is, the "injury" must "also involve some type of personal injury, including that which would entitle the plaintiff to seek to recover noneconomic damages." *Id.* at 719. This interpretation more closely serves the Act's objective of "rein[ing] in what was perceived to be excessive awards of noneconomic damages that were driving up the cost of medical malpractice insurance." *Id.* at 718.

In this case, Jaimes has pleaded both economic damages associated with the cost of having the braces removed and mental anguish damages arising from Access's failure to remove her braces. Jaimes's allegation that she has suffered mental anguish constitutes a claim for personal

6

injury that, if proven, would entitle her to recover noneconomic damages. *See id*.; *see also McAllen Hosps., L.P. v. Gomez*, No. 13-12-00421-CV, 2013 WL 784688, at \*5 (Tex. App.—Corpus Christi Feb. 28, 2013, no pet.) (mem. op.) (holding that plaintiff sought to recover for an "injury" under Act by seeking to recover for mental anguish damages arising from dispute concerning reasonableness of charges); *TTHR, L.P. v. Coffman*, 338 S.W.3d 103, 111 (Tex. App.—Fort Worth 2011, no pet.) (noting that "injury" under Act does not require physical injury). Accordingly, Jaimes's claims satisfy the "injury" element of a health care liability claim under the Act. *See Kumets*, 368 S.W.3d at 719; *see also McAllen*, 2013 WL 784688, at \*5.

Jaimes's claims against Access concern conduct during the course of her medical treatment, and she has failed to rebut the presumption that her claims are health care liability claims. *See Loaisiga*, 379 S.W.3d at 256. Because Jaimes failed to file an expert report as mandated by section 74.351(a) of the Act, the trial court abused its discretion in failing to dismiss her suit.

**CONCLUSION**

We reverse the trial court's order denying Access's motion to dismiss. We remand the cause to the trial court with instructions for the trial court to determine Access's reasonable attorney's fees and to enter an order awarding attorney's fees and costs of court to Access, as required by statute, and dismissing Jaimes's claims with prejudice. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b).

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Reversed and Remanded

Filed:   July 23, 2015