

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-08-437-CV

ROBERT G. RANELLE, D.O.                                    APPELLANT

V.

HERSCHEL EDWARD BEAVERS                                    APPELLEES
AND PAMELA BEAVERS

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In this interlocutory appeal, Appellant Robert G. Ranelle, D.O. challenges the trial court's order denying his motion to dismiss Appellees Herschel and Pamela Beaverses' health care liability claims for the failure to file an adequate expert report.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

On May 29, 2008, the Beaverses filed health care liability claims against Dr. Ranelle that arose from medical and surgical care he had provided to Herschel. According to their fourth amended petition, the Beaverses sought to recover damages from Dr. Ranelle for the following:

> On or about March 18, 2003, [Dr.] Ranelle performed surgery on Herschel Edward Beavers's back. Before surgery, [Dr.] Ranelle represented to [Herschel] that the surgery was indicated because [Herschel] had a ruptured disc, herniated nucleus pulposis, or herniated disc at the L5-S1 level of his spine. This was a false statement by Dr. Ranelle and the truth that [Herschel] did not have this condition was never disclosed until Dr. Ranelle confessed his dishonesty in his deposition on March 28, 2008. [Herschel] would not have consented to the surgery had he known that he did not have a ruptured/herniated disc. As a result of Dr. Ranelle's deception and the resultant surgery, [Herschel] suffered injuries and the [Beavers] have suffered damages.
>
> [Dr. Ranelle] violated the duty he owed to [Herschel] to exercise ordinary care and diligence exercised by other surgeons and healthcare providers in the same or similar circumstances and was negligent in that he:
>
>> (1) Performed unnecessary surgery;
>> (2) Failed to accurately interpret radiology studies;
>> (3) Negligently performed surgery; and
>> (4) Oversold the need for surgery.
>
> One or more of the above-mentioned acts and/or omissions, among others, by [Dr. Ranelle], was a proximate cause of injury and damages . . . .
>
> [Dr. Ranelle's] conduct as described above included making misrepresentations as well as concealing information that [Dr.

2

Ranelle] had a duty to disclose. Such conduct constitutes fraud and/or constructive fraud and resulted in injuries to [Herschel] and damages to the [Beavers] . . . .

As a result of the surgery performed by [Dr. Ranelle] on March 18, 2003, [Herschel] suffered an assault and battery by [Dr.] Ranelle, since any consent was based on deception by [Dr.] Ranelle.

The Beaverses timely served Dr. Ranelle with the curriculum vitae and expert report of Duncan McBride, M.D., a board certified neurosurgeon. In his report, Dr. McBride stated that Dr. Ranelle's care of Herschel was below the standard of care in two ways: (1) Dr. Ranelle was dishonest about Herschel's condition and (2) Dr. Ranelle failed to adequately pad and position Herschel's shoulder for surgery. He further stated that it was his opinion that the failure of Dr. Ranelle to observe the standard of care was a proximate cause of Herschel's ongoing back problems, Herschel's torn rotator cuff, and all of the consequences that naturally flow from the back surgery and surgery to repair the torn rotator cuff.

Dr. Ranelle timely filed his motion to dismiss with prejudice, objecting to Dr. McBride's report on the grounds that it failed to set forth the standard of care, breach, and causation elements of the health care liability claims alleged against him, including the theories of negligence, battery, fraud, constructive fraud, and lack of informed consent. After a hearing on the matter, the trial court denied Dr. Ranelle's motion. This appeal followed.

3

### III. Adequacy of Expert Report

In his sole issue, Dr. Ranelle argues that the trial court abused its discretion by concluding that Dr. McBride's expert report was legally sufficient because the report (1) failed to address the elements of the common law battery claim alleged by the Beaverses against Dr. Ranelle; (2) failed to address Herschel's pre surgery symptoms, their degree of severity, or why such symptoms did not merit, per the standard of care, going forward with the surgery; and (3) failed to provide information on how Herschel was actually padded or positioned during the surgery, or any causal relationship between such padding and positioning and Herschel's rotator cuff injury.

### A. Standard of Review

A trial court's ruling concerning an expert report filed under section 74.351 (formerly article 4590i, section 13.01) of the Medical Liability and Insurance Act is reviewable under the abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2008). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An

4

appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

## B. Applicable Law

In a health care liability claim, a claimant must serve an expert report on each defendant no later than the 120th day after the claim is filed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. If the claimant does not serve an expert report on a defendant physician or health care provider within the 120-day period, then on the motion of the affected physician or health care provider, the trial court must dismiss the claim with prejudice. *Id*. § 74.351(b).

A defendant may challenge the adequacy of a report by filing a motion to dismiss. *Id*. § 74.351(l). The trial court must grant the motion to dismiss if it finds, after a hearing, that "the report does not represent an objective good faith effort to comply with the definition of an expert report" in the statute. *Id.* While the expert report "need not marshal all the plaintiff's proof," it must provide a fair summary of the expert's opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code

Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878 (construing former art. 4590i, § 13.01).

To constitute a good faith effort, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Id*. at 879. But the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id*. The claimant's expert must incorporate enough information to fulfill two purposes: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude the claims are meritorious. *Id*.

When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document. *Id*. at 878. This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended. *See id.* However, section 74.351 does not prohibit experts, as opposed to courts, from making inferences based on medical history. *Marvin*

6

*v. Fithian*, No. 14-07-00996-CV, 2008 WL 2579824, at *4 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (mem. op.); *see also* Tex. R. Evid. 703 (providing that an expert may draw inferences from the facts or data in a particular case); Tex. R. Evid. 705 (providing that expert may testify in terms of opinions and inferences).

### 1. Battery Claim

In response to Dr. Ranelle's argument that Dr. McBride's expert report failed to address the elements of the Beaverses' claim for battery, the Beaverses argue that Dr. McBride's expert report meets the statutory requirements and that requiring anything more would go to the merits of their case. We agree.

The tort of battery has been recognized when a physician, with no justification or excuse, performs an operation without the express or implied consent of the patient. *Gravis v. Physicians & Surgeons Hosp. of Alice*, 427 S.W.2d 310, 311 (Tex. 1968). However, in *Murphy*, the Texas supreme court held that the failure to obtain consent does not automatically result in a battery because "[t]here may be reasons for providing treatment without specific consent that do not breach any applicable standard of care." *See Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005). "The existence or nonexistence of such reasons is necessarily the subject of expert testimony." *Id*.

Here, Dr. McBride states in his expert report that one of the standards of care for a spine surgeon in this type of case is "[b]eing truthful about a patient's condition." He further states that "[b]ecause the risks and consequences of spinal surgery are serious, it is important to avoid performing surgery when the reason for the surgery is dishonestly stated." Dr. McBride opined in his report that Dr. Ranelle's care of Herschel fell below the standard of care based on the following:

> 1) Dr. Ranelle told [Herschel] and his insurance company that he needed surgery because [Herschel] had a herniated disc, when in fact [Herschel] did not have a herniated disc. Dr. Ranelle admits in his deposition that he told [Herschel] that he had a herniated disc or herniated nucleus pulposis when he knew this in fact was not the case. Patients rely on their surgeons to be truthful about their condition and need for surgery. Telling a patient and his insurance company that he has a herniated disc that needs surgery is overstating the patients condition and is misleading because the success rate for leg pain relief after spine surgery for an annular tear is much lower than spine surgery for a herniated disc.

He concluded his report by stating that the surgery "would not have been performed if Dr. Ranelle had been honest" and it was his opinion that Dr. Ranelle's failure to observe the standard of care was a proximate cause of Herschel's injuries. Specifically, Dr. Ranelle's actions were the proximate cause of

> [Herschel's] ongoing back problems and all of the consequences that naturally flow from performing a surgery that would not have been performed if Dr. Ranelle had been honest. These

8

consequences include hospitalization, pain associated with recovery from the trauma of surgery, limitation in activities and additional medical care including in this case, physical therapy and additional surgery to remove the bone stimulator. Additionally, [Herschel] suffered a shoulder injury as a result of Dr. Ranelle's failure to properly position and pad [Herschel] requiring surgery for a torn rotator cuff.

Dr. McBride's expert report is not required to meet the same standards as evidence offered in summary judgment proceedings or in a trial. *See Bowie Memorial Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). Therefore, we agree with the Beaverses that the trial court could have reasonably found that Dr. McBride's expert report discusses the standard of care, breach, and causal link with sufficient specificity to fulfill the two required purposes of section 74.351: (1) to inform Dr. Ranelle of the specific conduct that the Beaverses have called into question and (2) to provide a basis for the trial court to conclude that the claim has merit. *See id.* at 52; *Palacios*, 46 S.W.3d at 879. To require anything more would go to the merits of their case. *See Hamilton v. Durgin*, No. 10-08-00146-CV, 2008 WL 4816624, at *2 (Tex. App.—Waco Nov. 5, 2008, no pet.) (mem. op.) (holding that the expert report was sufficient and that the defendants were arguing the merits of the claim by relying on documents and information outside of the reports); *Arboretum Nursing & Rehab. Ctr. of Winnie, Inc. v. Isaacks*, No. 14-07-00895-CV, 2008 WL 2130446, at *6 (Tex. App.—Houston [14th Dist.] May 22, 2008, no pet.)

9

(mem. op.) (holding that an expert report that failed to address several contentions in appellee's petition was sufficient for purposes of the required statutory elements). Accordingly, we overrule that portion of Dr. Ranelle's sole issue pertaining to the Beaverses' battery claim.

### 2. Negligence: Unnecessary Surgery

In response to Dr. Ranelle's argument that Dr. McBride's expert report failed to state, or establish, that the surgery itself was unnecessary, the Beaverses assert that Dr. Ranelle waived this complaint or, in the alternative, that the report was sufficient to provide a basis for the trial court to conclude that the surgery was unnecessary. We disagree on the matter of waiver but agree on the issue of sufficiency.

First, the Beaverses assert that Dr. Ranelle never complained in his motion to dismiss that Dr. McBride's report failed to state or establish unnecessary surgery and therefore Dr. Ranelle has failed to preserve this issue for appeal. In support of their argument, the Beaverses direct our attention to *Plemons*, in which we recently reiterated that a complaint on appeal must be the same as that presented in the trial court. *Plemons v. Harris*, No. 02-08-00326-CV, 2009 WL 51290, at *3 (Tex. App.—Fort Worth Jan. 8, 2009, no pet.) (mem. op.). Here, however, although Dr. Ranelle's motion to dismiss did not contain the words "unnecessary surgery," it did contain the following complaint:

10

[T]here is no discussion whatsoever of [Herschel] presenting symptoms, their degree or severity, and why such symptoms, of themselves, did not merit, per the standard of care, going forward with this particular surgical procedure. Moreover, there is no discussion of the results of the surgery in terms of whether [Herschel] found relief from the symptoms that led to the surgery in the first place.

Dr. Ranelle's motion asserts that the Beaverses failed to address in the expert report that Herschel's symptoms did not require going through with the surgery and also that the surgery did not benefit Herschel. In other words, Dr. Ranelle's complaint asserts that the Beaverses failed to address in the expert report that Herschel's surgery was unnecessary. Therefore, because the argument of unnecessary surgery is apparent from the context of Dr. Ranelle's complaint, we hold that he has preserved this issue for appeal. Tex. R. App. P. 33.1(a).

The Beaverses also argue that Dr. McBride's expert report was sufficient to provide the trial court with the basis to conclude that Herschel's surgery was unnecessary.

In the report, Dr. McBride states that one of the standards of care for a spine surgeon in this type of case is "[b]eing truthful about a patient's condition" and that "[b]ecause the risks and consequences of spinal surgery are serious, it is important to avoid performing surgery when the reason for the surgery is dishonestly stated." He further opined that "[p]atients rely on their surgeons to be truthful about their condition and need for surgery."

11

Dr. McBride's report then states his opinion of the manner in which Dr. Ranelle breached the standard of care. He states that Dr. Ranelle admitted, in his deposition, that he had told Herschel that he had a ruptured disc and needed surgery but then admitted that Herschel did not, in fact, have a ruptured disc.

Finally, Dr. McBride's report details how Dr. Ranelle's dishonesty led to Herschel having a surgery that was unnecessary and the injuries that resulted from the unnecessary surgery. Dr. McBride states,

> It is my opinion based on reasonable medical probability that the failure of Dr. Ranelle to observe the standards of care in Herschel Beavers' case was a proximate cause of the [sic] Mr. Beavers' ongoing back problems and all of the consequences that naturally flow from performing a surgery that would *not have been performed* if Dr. Ranelle had been honest. [Emphasis added.][2]

Therefore, after viewing the information set forth within the four corners of Dr. McBride's report, we hold that the trial court did not abuse its discretion by determining that Dr. McBride's report provides a fair summary of his expert opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm or damages claimed" as to the Beaverses' unnecessary surgery claim. *See* Tex.

---

[2] Because we previously listed the specific injuries suffered by Herschel as a result of the surgery, we need not list them again.

Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878. Furthermore, the trial court did not abuse its discretion by determining that Dr. McBride's report constitutes an objective good faith effort to satisfy the two purposes of section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. Accordingly, we overrule that portion of Dr. Ranelle's sole issue pertaining to the Beaverses' claim for unnecessary surgery.

### 3. Negligence: Rotator Cuff Injury

In response to Dr. Ranelle's argument that Dr. McBride's expert report was conclusory as to Herschel's rotator cuff injury, the Beaverses assert that Dr. Ranelle's admission, in his deposition, that Herschel suffered a torn rotator cuff as a result of his positioning during the surgery, is sufficient to conclude that the Beaverses' claim has merit. We agree.

In his expert report, Dr. McBride states that one of the standards of care in this type of case is "[p]ositioning and padding the patient during lumbar spine surgery so his shoulders are protected from injury." He further states that Dr. Ranelle could have prevented Herschel's rotator cuff injury with proper positioning and padding. He then provides his opinion on Dr. Ranelle's breach of the standard of care by referring to Dr. Ranelle's admission "that Herschel Beavers suffered a torn rotator cuff as a result of the positioning for the spine surgery." Finally, Dr. McBride's report provides assertions as to the causal

13

relationship between Dr. Ranelle's negligence and Herschel's torn rotator cuff that are not merely conclusory in light of Dr. Ranelle's admission. He states that Herschel "suffered a shoulder injury as a result of Dr. Ranelle's failure to properly position and pad [Herschel] requiring surgery for a torn rotator cuff."

Thus, Dr. McBride's report summarizes his opinions as to the applicable standard of care, the manner in which Dr. Ranelle failed to meet the standard, and the causal relationship between Dr. Ranelle's negligence and Herschel's torn rotator cuff. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). We therefore hold that the trial court did not abuse its discretion by determining that Dr. McBride's report complied with section 74.351 as to the Beaverses' claim for Herschel's torn rotator cuff, and accordingly we overrule that portion of Dr. Ranelle's sole issue pertaining to Herschel's rotator cuff injury.

### IV. Conclusion

Having overruled Dr. Ranelle's sole issue in its entirety, we affirm the trial court's order denying his motion to dismiss.

BOB MCCOY
JUSTICE

PANEL: CAYCE, C.J.; MCCOY and MEIER, JJ.

CAYCE, C.J. dissents without opinion.

DELIVERED: April 30, 2009

14