

# NUMBER 13-14-00004-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**VALLEY REGIONAL MEDICAL CENTER,**            **Appellant,**

**v.**

**MARIA GUADALUPE CAMACHO,**            **Appellee.**

---

**On appeal from County Court at Law No. 1
of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Benavides
Memorandum Opinion by Justice Garza**

In this appeal, we are once again faced with the "knotty" issue of whether a plaintiff's claim is a health care liability claim ("HCLC") under the Texas Medical Liability Act ("TMLA") and therefore subject to that statute's expert report requirement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2013 3d C.S.); *Loaisiga v. Cerda*, 379 S.W.3d 248, 265 (Tex. 2012) (Lehrmann, J., concurring and dissenting)

("Whether a claim against a health care provider is [an HCLC] is a knotty issue this Court has repeatedly struggled with."). Appellee Maria Guadalupe Camacho failed to timely serve an expert report and the trial court denied a motion to dismiss filed by appellant, Valley Regional Medical Center ("VRMC").

We issued our original memorandum and opinion in this case on April 9, 2015. Since that time, Camacho filed a motion for rehearing and a supplemental motion for rehearing, and the Texas Supreme Court handed down *Ross v. St. Luke's Episcopal Hospital*, No. 13-0439, 2015 WL 2009744 (Tex. May 1, 2015), which altered the law applicable to the issue raised in this appeal. We deny the motion for rehearing and supplemental motion for rehearing, but because we find that the claim raised by Camacho is not an HCLC under *Ross*, we vacate and withdraw our memorandum opinion and judgment of April 9, 2015 and substitute the following memorandum opinion and accompanying judgment affirming the trial court's order.

## I. BACKGROUND

Camacho was injured on August 29, 2012, when she was visiting a family member at the women's center at VRMC. Her first amended petition, filed on May 20, 2013, alleged that, as she was walking through a set of automatic sliding doors, "the doors suddenly closed with no warning," "pinn[ing] her between the sliding doors," "painfully crushing" her and causing her to suffer injury to her right shoulder. She alleged that VRMC was negligent by (1) "permitt[ing] such condition to exist" and (2) failing "to adequately correct the conditions or warn [Camacho], despite the fact that [VRMC] knew, or in exercise of ordinary care, should have known of the existence of the dangerous condition and that there was likelihood of someone being injured." She further alleged

2

that

> the dangerous condition of [the] door and premises had continued for such a period of time that it should have been noticed by [VRMC] and that [VRMC] should have warned patrons, such as [Camacho], of the condition and/or should have corrected the dangerous condition of the defective motion sensor of the sliding doors before [Camacho] was crushed so that it would not be dangerous if [VRMC] had exercised ordinary care in the inspection and maintenance of its premises.[1]

On August 27, 2013, VRMC filed a motion to dismiss, asserting that the claim is an HCLC and that Camacho was required, but failed, to file an expert medical report within 120 days of filing suit.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).  A hearing was held on October 29, 2013.  At the hearing, VRMC's counsel represented to the trial court that the "sliding doors" at issue in Camacho's suit were "hooked up to an alarm called the Infant Abduction System."  Counsel explained that the system, which is designed to prevent the abduction of newborn babies from the nursery section of the hospital, causes the sliding doors to automatically close when it detects the presence of an ankle bracelet which is secured to each infant.  In response, Camacho's counsel offered as evidence several pages of a local phone book and stated:  "I wanted to find a physician who specialized in medical care/engineering door issues, and I'm offering [this exhibit] to prove the point they don't exist."

The trial court later denied VRMC's motion.  Subsequently, VRMC filed a motion to reconsider which included an affidavit by Sergio Loya, VRMC's Director of Plant Operations.  Loya averred as follows:

> My investigation of this accident indicates that it occurred at the Women's Pavillion which includes the Labor and Delivery, Post Partum and Nursery areas.  The Infant Abduction System alarm sounds whenever a sensor

---

[1] Camacho also sued the manufacturer of the door, Assa Abloy Entrance Systems US Inc. f/k/a Besame US Inc. ("Assa Abloy").  Assa Abloy did not join in VRMC's motion to dismiss and is not a party to this interlocutory appeal.

3

attached to a baby in the Nursery or Post Partum is within a specified distance of the swinging doors. The Infant Abduction System is designed to close and lock the doors as a safety feature that stops a baby from being abducted from the hospital. My investigation reveals that this accident occurred when the alarm sounded and the doors were closing.

The record also contains an affidavit by Camacho stating:

When the doors closed there was no audible warning nor was there a sign or visual warning that these doors were part of a security system or would close without reason. The doors just closed quickly injuring me. I later understood that the doors would close if a child was removed without proper authority, however, I was not carrying a child nor was there a child near me; in fact there was no child in sight.

The trial court denied VRMC's motion to reconsider. The judgment denying the motion specifically stated that the exhibits offered at the hearing were admitted and considered in evaluating the motion to dismiss. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West, Westlaw through 2013 3d C.S.) (authorizing appeal of interlocutory order denying motion to dismiss for failure to file a medical expert report).

## II. DISCUSSION

### A. Applicable Law and Standard of Review

Under TMLA, a plaintiff seeking damages in an HCLC must serve a medical expert report upon each party's attorney no later than the 120th day after the date the original petition was filed. *Id.* § 74.351(a) (stating that expert report requirement applies to any "claimant" asserting an HCLC); *see id.* § 74.001(a)(2) (West, Westlaw through 2013 3d C.S.) (defining "claimant" as a person seeking damages in an HCLC). The statute defines HCLC as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative

4

services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13).

Whether a claim is an HCLC under the TMLA is a matter of statutory construction, which is a purely legal question that we review de novo. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). To determine whether a cause of action falls under the statute's definition of an HCLC, we examine the claim's underlying nature. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). Artful pleading does not alter that nature. *Id.* In making the determination, we consider the entire court record, including the pleadings, motions and responses, and relevant evidence properly admitted. *Loaisiga*, 379 S.W.3d at 258.

Claims "which require[] the use of expert health care testimony to support or refute the allegations" are HCLCs. *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724, 727 (Tex. 2013); *see Tex. W. Oaks*, 371 S.W.3d at 182. However, the inverse is not true: "[e]ven when expert medical testimony is not necessary, the claim may still be an HCLC." *Tex. W. Oaks*, 371 S.W.3d at 182 (citing *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) ("The fact that in the final analysis, expert testimony may not be necessary to support a verdict does not mean the claim is not [an HCLC].")).

VRMC alleged in its motion to dismiss that the claim is an HCLC because it alleges a "departure from accepted standards of . . . safety." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). "Safety" is not defined in the statute but is commonly defined as "the condition of being untouched by danger; not exposed to danger; secure from danger, harm or loss." *Diversicare*, 185 S.W.3d at 855.

5

The Texas Supreme Court considered the extent to which the TMLA covers "safety claims" in *West Oaks*. *See* 371 S.W.3d at 184–85. In that case, a majority of the Court espoused a construction of the statutory definition of HCLC under which the phrase "directly related to health care" modifies "professional or administrative services," but does not modify the term "safety." *Id.* (noting that, under the "last antecedent" doctrine of statutory interpretation, "a qualifying phrase should be applied only to the portion of the sentence immediately preceding it"). In other words, if a claim is based on an alleged departure from accepted standards of "safety," the "safety component . . . need not be directly related to the provision of health care." *Id.* at 186. In *West Oaks*, which involved the assault of a hospital employee by a psychiatric patient on hospital grounds, the Court held that the plaintiff's claim was subject to the TMLA because "the dispute . . . is, at its core, over appropriate standards of care owed to [a] mental health professional in treating and supervising a psychiatric patient." *Id.* at 182. According to the Court, "[i]t would blink reality to conclude that no professional mental health judgment is required to decide what those should be, and whether they were in place at the time of [the plaintiff]'s injury." *Id.*

In *Ross*, the supreme court clarified that, though a safety claim need not be "directly related" to health care, it must have a "substantive relationship with the providing of medical or health care"—that is, there must be a "substantive nexus between the safety standards allegedly violated and the provision of health care"—in order for it to be an HCLC. 2015 WL 2009744, at *12. The relationship must be more than the mere fact that the injury occurred in the healthcare setting or that the defendant is a doctor or health care provider. *Id.* The court provided the following non-exclusive list of seven factors to

6

consider when determining whether a safety claim "is substantively related to the defendant's providing of medical or health care and is therefore an HCLC":

1. Whether the alleged negligence of the defendant occurred in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Whether the injury occurred in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. Whether the claimant was in the process of seeking or receiving health care at the time of the injury;

4. Whether the claimant was providing or assisting in providing health care at the time of the injury;

5. Whether the alleged negligence was based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, whether it was a type used in providing health care; and

7. Whether the alleged negligence occurred in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies.

*Id.* at *13–14.

**B. Analysis**

Arguably, VRMC's alleged negligence occurred in the course of its performance of tasks with the purpose of protecting patients—i.e., mothers and newborn infants—from harm. However, consideration of the remaining *Ross* factors militates against a finding that her claim has a "substantive relationship with the providing of medical or health care." *See id.* In particular, Camacho was not seeking or receiving health care at the time of her injury; she was not providing or assisting in providing health care at the time of her injury; and the injury did not occur in a place where patients might be while receiving care.

7

*See id.* Further, there is no indication that the hospital was required by any governmental regulation or accrediting agency to properly maintain the infant-abduction-prevention system, or that such maintenance was a professional duty owed by VRMC. *See id.* Finally, the instrumentality involved in the alleged negligence—the automatic closing door—was not a type of instrumentality used in providing health care. *See id.* Instead, the sole purpose of the automatic door is to prevent criminal misconduct. In that regard, the infant-abduction-prevention system at VRMC is related to healthcare only by virtue of the fact that it is situated in a hospital. That is not enough to bring the claim under the TMLA. *See id.*

Considering all seven factors set forth in *Ross*, we conclude that Camacho's claim alleges a departure from standards of safety that do not have a "substantive relationship with the providing of medical or health care." *See id.* at *12. Accordingly, the claim is not an HCLC and the trial court did not err in denying VRMC's motion to dismiss.

### III. CONCLUSION

We affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
14th day of May, 2015.

8