Opinion issued March 26, 2024



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00541-CV

———————————

**AZUL SHIRAZALI JAFFER, M.D. AND SHIRAZALI, PLLC D/B/A AZUL PLASTIC SURGERY, Appellants**

**V.**

**MICHELLE MAESTAS, Appellee**

On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Case No. 22-DCV-298841

## MEMORANDUM OPINION

Michelle Maestas sued Azul Shirazali Jaffer, M.D. and Shirazali, PLLC d/b/a Azul Plastic Surgery, alleging that Dr. Jaffer sexually assaulted her in the recovery room after a breast augmentation procedure. Jaffer and Azul moved to dismiss Maestas's suit for failure to file an expert report. Because Maestas's sexual assault

is not a health care liability claim subject to the expert-report requirement, the trial court did not err in denying the motion to dismiss. We affirm.

## Background

In October 2022, Dr. Jaffer performed a breast augmentation procedure on Maestas.[1] Maestas alleges that she woke up in the recovery room to Dr. Jaffer pressing his penis against her feet, rubbing her vagina with his ungloved hand then putting her fingers in her mouth, and using Maestas's hand to rub his penis. Maestas further alleges that Dr. Jaffer touched her vagina again as she used the restroom.

The next month, Maestas sued Jaffer and his practice, Azul Plastic Surgery, for assault, sexual assault, intentional infliction of emotional distress, negligence, and gross negligence. After filing a general denial, Jaffer and Azul moved to dismiss, arguing that Maestas had brought a health care liability claim, which required that she serve an expert report under the Texas Medical Liability Act. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a). Her failure to serve the expert report, they argued, entitled Jaffer and Azul to dismissal. *See id.* § 74.351(b). The trial court denied the motion to dismiss.

---

[1]     At this early stage, the parties do not have the benefit of full discovery, leaving the pleadings and the contents of the expert reports (if any) as the main sources of information about the claim's underlying facts. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a) (providing a 120-day deadline to file motion to dismiss). For this reason, the below background recitations come mainly from Maestas's petition and may be confirmed or refuted by the discovery process.

## A. Standard of Review

Whether a suit asserts a health care liability claim is a statutory construction question we review de novo. *See Lake Jackson Med. Spa v. Gaytan*, 640 S.W.3d 830, 836 (Tex. 2022). To answer that question, we focus on the claim's "underlying nature . . . rather than its label." *Id.* To determine the claim's underlying nature, we consider the "entire court record, including the pleadings, motions and responses, and relevant evidence properly admitted." *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012).

## B. Whether a suit arising out of a sexual assault is a health care liability claim

The question before the Court is whether Maestas's claims trigger the Texas Medical Liability Act and required her to serve, within 120 days of the answer, an expert report setting out the breach of the standard of care. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Jaffer and Azul claim that Maestas brings a health care liability claim because the alleged sexual assault occurred during Jaffer's care and treatment of her and Maestas has not rebutted the presumption that her claim against a treating physician triggers the TMLA. Maestas responds that she complains of the offensive contact, she did not consent to that contact, and the only relationship between the provision of health care and the offensive contact is the setting where it happened.

3

To qualify as a health care liability claim under the TMLA:

(1)     the claim must be asserted against a physician or health care provider;

(2)     it must pertain to

    (a)     treatment,

    (b)     lack of treatment, or

    (c)     other claimed departure from accepted standards of

        (i) medical care,

        (ii) health care,

        (iii) safety, or

        (iv) professional or administrative services directly related to health care; and

(3)     the alleged departure must proximately cause injury or death to the claimant.

*Id.* § 74.001(a)(13).

Thus, a health care liability claim has three elements: (1) a suit against a physician or health care provider; (2) the claims are grounded in treatment, lack of treatment, or a departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission must have proximately caused the injury to the plaintiff. *Gaytan*, 640 S.W.3d at 840. The TMLA creates a rebuttable presumption that a plaintiff's claim is a health care liability claim if it is brought against a

4

physician or health care provider and is based on facts "implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Loaisiga*, 379 S.W.3d at 258.

Because the parties only dispute the second element—whether the claims are grounded in treatment, lack of treatment, or a departure from accepted standards of medical care, safety, or professional or administrative services directly related to health care—that is where we focus.

Jaffer and Azul do not specify whether Maestas's claims are about treatment or lack of treatment or alleged departures from standards of medical care, safety, or professional or administrative services directly related to health care. And neither side analyzes the factors under *Ross v. St. Luke's Episcopal Hospital*, 462 S.W.3d 496 (Tex. 2015), which narrowed the universe of what claims are health care liability claims. *See Village Green Alzheimer's Care Home, LLC v. Graves*, 650 S.W.3d 608, 614 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (explaining, post-*Ross*, that not every claim set in a health care facility is a health care liability claim). To prevail, Maestas must rebut the presumption that her claim is a health care liability claim.

Because Maestas does not complain about the procedure itself or any professional or administrative services connected with the health care she received, safety is the only possible relevant standard that Jaffer and Azul might assert.

"Safety" means "being secure from danger, harm or loss." *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 890 (Tex. 2023).

In *Ross*, a hospital lobby slip-and-fall case, the Supreme Court of Texas clarified how safety standard claims should be analyzed. *Ross*, 462 S.W.3d at 503–05. First, the Court reiterated that the fact that a premises liability claim occurred in a health care setting would not suffice to show a health care liability claim. *Id*. at 503. A claim is a safety-standards health care liability claim only if there is "a substantive nexus between the safety standards allegedly violated and the provision of health care." *Id*. at 504. Instead of a but-for relationship, the pivotal issue is whether the standards on which the claim rests implicate the defendant's duties as a health care provider, including his duty to provide for patient safety. *Id*. Second, to this end, the *Ross* Court gave seven non-exclusive factors to consider in determining whether a claim based on an alleged violation of a safety standard is a health care liability claim:

(1)   did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

(2)   did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

(3)   at the time of the injury was the claimant in the process of seeking or receiving health care;

6

(4)     at the time of the injury was the claimant providing or assisting in providing health care;

(5)     is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

(6)     if an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; and

(7)     did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.* at 505. Evaluating Maestas's claims under the *Ross* factors, the only factor that supports her claims being health care liability claims is the location and the receipt of health care.

Indeed, even before *Ross*, the Supreme Court of Texas held that a claim against a physician for assault was not a health care liability claim if the conduct of which a plaintiff complains is "wholly and conclusively inconsistent with, and thus separable from," receiving health care. *Loaisiga*, 379 S.W.3d at 257.

The complained-of conduct is separable from receiving health care if the record shows:

(1)     there is no complaint about any act of the provider related to medical or health care services other than the alleged offensive contact,

(2)     the alleged offensive contact was not pursuant to actual or implied consent by the plaintiff, and

7

(3)     the only possible relationship between the alleged offensive contact and the rendition of medical services or healthcare was the setting in which the act took place.

*Id.*

First, Maestas does not complain about the procedure she had performed at Azul, only the alleged offensive touching as she came out of the procedure. Second, nothing in the record suggests that Maestas consented to Jaffer allegedly touching her with his penis when she consented to the breast augmentation procedure. Third, the only possible relationship between the alleged sexual assault and the breast augmentation procedure is that it happened in a surgical recovery room and was committed by the physician.

Although courts have found that assaults by health care personnel or patients during treatment were health care liability claims triggering the TMLA, those cases are distinguishable. One example is offensive touching that was an alleged departure from standards of medical care. *See, e.g.*, *Loaisiga*, 379 S.W.3d at 256 (whether groping sinus/flu patient's breast departed from standard of care during examination and exceeded scope of consent was question triggering TMLA); *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam) (holding that plaintiff's battery claim was a health care liability claim because "[t]here may [have] be[en] reasons for providing treatment without specific consent that do not breach any

applicable standard of care[, and] [t]he existence or nonexistence of such reasons is necessarily the subject of expert testimony").

Another example is assaults by employees at a health care facility when the plaintiff asserted a negligent hiring or training claim or a failure to keep the plaintiff safe, in other words, a safety-standards claim. *See, e.g.*, *Rogers v. Bagley*, 623 S.W.3d 343, 350–53 (Tex. 2021) (civil rights excessive force claim arising from improper restraint allegation against state hospital and employees was health care liability claim); *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 192–93 (Tex. 2012) (psychiatric technician's claim for failure to train and supervise him to work with violent patients was health care liability claim); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) ("Rubio's claim is not that Diversicare, through its employees and agents, committed the sexual assault. Rubio claims that through lapses in professional judgment and treatment Diversicare negligently allowed the sexual assault to occur.").

As our sister court concluded in a similar sexual assault claim, "it would defy logic to suggest that [this] sexual assault, is an inseparable part of the rendition of medical care or a departure from accepted standards of health care." *Wasserman v. Gugel*, No. 14-09-00450-CV, 2010 WL 1992622, at *3 (Tex. App.—Houston [14th Dist.] May 20, 2010, pet. denied) (mem. op.).

There is a separate reason to conclude that Maestas's claims are not health care liability claims here: their proof requires no expert testimony. It does not require professional medical judgment to conclude that allegations of sexual assault by a treating physician fall outside acceptable safety or medical standards. *See Graves*, 650 S.W.3d at 618 (nursing home resident mauled by stray dog did not bring either a safety-standards or medical standards-based health care liability claim); *Belmont Vill. Hunters Creek TRS, LLC v. Marshall*, 634 S.W.3d 115, 124–25 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (plaintiff's claim against assisted living facility arising from sexual assault in residential unit after facility prohibited residents from adding locks their doors was separable from the rendition of medical services and thus was not health-care-standards claim); *Iasis Healthcare Corp. v. Pean*, No. 01-17-00638-CV, 2018 WL 3059789, at *5 (Tex. App.—Houston [1st Dist.] June 21, 2018, pet. denied) (mem. op.) ("[T]hese claims do not allege that Iasis provided health or medical care, safety, or professional or administrative services directly related to health care that fell below the standard of care. Instead, these are claims brought by [a former patient] against Iasis premised on the act of filing criminal charges. Medical expert testimony would not be required to establish whether or not Iasis was a willing participant[] in a conspiracy to maliciously prosecute [the former patient]."); *Alsup v. Hickory Trail Hosp*., No. 05-16-00527-CV, 2017 WL 1046769, at *13 (Tex. App.—Dallas Mar. 20, 2017, no

10

pet.) (mem. op.) (plaintiff's invasion of privacy claim based on defendant hospital's attorneys' e-filing of documents during litigation that included sensitive information was not directly related to defendants' provision of health care services and was therefore not health care liability claim). Thus, Maestas has rebutted the presumption that her claims against Jaffer and Azul are health care liability claims.

## Conclusion

We affirm the trial court's order denying Jaffer and Azul's motion to dismiss.


Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.