**Opinion filed October 24, 2024**



In The

# Elebenth Court of Appeals

_____

## No. 11-22-00277-CV

_____

## MARTHA MOURNING, FNP AND KHAVAR DAR, MD, Appellants
## V.

## GEORGE MUNS, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-22-04-0401-CV**

## M E M O R A N D U M   O P I N I O N

This is a medical malpractice case that concerns the adequacy of expert reports. Chapter 74 of the Texas Civil Practice and Remedies Code requires all claimants asserting "health care liability claim[s]" to serve expert reports on each defendant within 120 days after each defendant's original answer is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2024). Such reports must be provided by an expert who is qualified to render the opinions at issue. *Id.*

§ 74.351(r)(5)–(6). Additionally, the reports must provide "a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.*

Appellants Martha Mourning, a family nurse practitioner (FNP), and Khavar Dar, M.D., appeal from the trial court's order denying their motion to dismiss under Chapter 74 based upon their challenge to the adequacy of the expert reports. *See id.* § 51.014(a)(9) (An order denying a motion to dismiss under Section 74.351(b) is subject to interlocutory appeal.). We reverse and remand.

*Background Facts*

We note at the outset that Appellee George Muns is pro se both at trial and on appeal. On August 24, 2020, Muns was "intubated emergently" at a hospital in Pecos due to respiratory distress. He was subsequently transferred to Odessa Regional Medical Center (ORMC) via air flight transport. Muns filed suit based on medical care and treatment that he received at ORMC.

Muns alleged in his third amended petition that on August 24, 2020, due to inadequate sedation, he woke up in the critical care unit at ORMC while intubated. He then pulled out both his orogastric and endotracheal tubes. About ten minutes later, Jodi Bittick, a nurse at ORMC, telephoned a "Mrs. Muns,"[1] Muns's medical power of attorney, to inform her that Muns was "sitting up in bed with [a] CPAP on and is grabbing at [the] mask, secondary to residual medication in his system, but is stable." However, there is no record that Bittick attempted to obtain consent for Muns to be reintubated.

---

[1] Although the record is not entirely clear, it appears that "Mrs. Muns" was likely Sandy Muns, who is Appellee's spouse.

Several minutes later, Muns was reintubated by Mourning. Muns claimed that, at the time, "[n]o emergency existed and no diagnostic procedures were performed to support the procedure." He alleged that, instead, the medical staff made a decision that he should be reintubated because "the providers did not want to have to provide the extra care needed" to prevent him from removing his CPAP mask.

Muns further alleged that the following morning, he awoke with both arms in restraints while two nurses performed an IV infusion, which caused severe burning pain. He claimed that he then attempted to pull his arm away and began trying to communicate with the staff using hand gestures. In response, charge nurse Michael Gonzales[2] allegedly told Muns that he should "[l]ay back and shut up." As Muns continued to gesture, Gonzales allegedly stated that Muns "lost [his] rights" when he removed his intubation, and reiterated that he was not going to be released from restraints.

Muns claimed that, several minutes into the procedure, he lost control of his gag reflex and vomited into the tubes that were placed in his mouth. He reported that the staff began "scrambling" to clear his airways while he continued to struggle against his restraints.

According to Muns, Dr. Dar appeared in the room approximately ten minutes later. Standing near the bedside, Dr. Dar allegedly berated Muns, repeatedly calling him an "a-----e." Muns asserted that he then started to fear for his life, and began crying. In response, Dr. Dar allegedly told Muns:

> Ok a-----e, you are going to do exactly what I say a------e and if you are an a------e like you were yesterday, I'm going to intubate you, sedate you, and place you on a ventilator for 2 weeks.

---

[2]Gonzales is not a party to this appeal.

After Dr. Dar left the room, Muns wrote a note asking whose "brite[sic] idea" it was to "leave [him] un[-]sedated," and that it was "[n]ot funny" to "intubate [him] [and] paralyze [him] for [two] wks[sic]." Following these events, Muns was extubated and released against medical advice.

Muns filed suit against Dr. Dar, Mourning, Gonzales, and ORMC[3] asserting causes of action for medical battery and negligence. He contended that he suffers "severe PTSD, Anxiety, and depression" caused by the medical care that he received, requires psychotropic medications, is no longer able to work in the health care industry, has daily nightmares and insomnia, requires weekly trauma counseling, and requires a service animal. Muns sought to recover damages of $11,289,317.52.

Muns served reports from Dr. David Henderson and Catherine C. Wilson, a registered nurse, on Mourning and Dr. Dar in an attempt to comply with Chapter 74. Dr. Dar and Mourning each filed motions to dismiss Muns's claims against them based on alleged deficiencies in the expert reports. The trial court denied both motions, and this appeal followed.

*Analysis*

In their issue on appeal, Dr. Dar and Mourning allege that the trial court abused its discretion when it found that the expert reports served by Muns are a good faith effort to satisfy the requirements of Chapter 74.

We note at the outset the similarity of the facts in this case and those in *Murphy v. Russell*, 167 S.W.3d 835 (Tex. 2005). Russell, the claimant in *Murphy,* alleged that Murphy, an anesthesiologist, administered a general anesthetic without her consent. *Id.* at 836. Russell asserted a claim for battery against Murphy. *Id.* at

---

[3]ORMC also is not a party to this appeal.

4

837. In addressing the need for Russell to comply with the expert report requirement, the Texas Supreme Court stated:

> Russell's battery claim arises from treatment rendered by Murphy. Medical treatment will not constitute a battery unless it is provided without the patient's consent. But failure to obtain consent does not automatically result in liability. There may be reasons for providing treatment without specific consent that do not breach any applicable standard of care. The existence or nonexistence of such reasons is necessarily the subject of expert testimony. In enacting former article 4590i, the Legislature intended health care liability claims to be scrutinized by an expert or experts before the suit can proceed. Russell cannot avoid the requirements of former article 4590i[4], including its expert report requirement and caps on damages, by filing a bare-bones pleading that asserts battery based on lack of consent. We reaffirm that a claimant cannot escape the Legislature's statutory scheme by artful pleading.

> It must also be borne in mind that article 4590i's expert report requirement establishes a threshold over which a claimant must proceed to continue a lawsuit. It does not establish a requirement for recovery. It may be that once discovery is complete and the case is tried, there is no need for expert testimony. In a case alleging lack of consent, a factfinder might reasonably conclude that there was a battery and that some damages were sustained without the need for expert testimony.

*Id.* at 838 (footnotes omitted). Thus, expert testimony may or may not be necessary in the trial of Muns's claims for medical battery. *See id.* However, even in such cases, "the Legislature envisioned that discovery and the ultimate determination of what issues are submitted to the factfinder should not go forward unless at least one expert has examined the case" and satisfied the requirements of Chapter 74. *See id.*

---

[4]Former Article 4590i was the predecessor statute of Chapter 74 of the Texas Civil Practices and Remedies Code. *See Murphy*, 167 S.W.3d at 836 n.1.

We review a trial court's ruling on a motion to dismiss a health care liability claim for an abuse of discretion. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam); *Am. Transitional Care Centers of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001); *Daughtery v. Schiessler*, 229 S.W.3d 773, 774 (Tex. App.—Eastland 2007, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Daughtery*, 229 S.W.3d at 774 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)). In analyzing a report under this standard, we consider only the information contained within the four corners of the report. *Abshire*, 563 S.W.3d at 223. We defer to the trial court's factual determinations if supported by the evidence, but review its legal determinations de novo. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam).

Chapter 74 provides that a "court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." CIV. PRAC. & REM. § 74.351(*l*). An "expert report" is, in turn, defined as:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

CIV. PRAC. & REM. § 74.351(r)(6). An expert report demonstrates a "good faith effort" when it (1) informs the defendant of the specific conduct the plaintiff has called into question, and (2) provides a basis for the trial court to conclude that the claims have merit. *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018). "A report

6

that merely states the expert's conclusions about the standard of care, breach, and causation" is insufficient. *Palacios*, 46 S.W.3d at 879; *accord Abshire*, 563 S.W.3d at 223.

Dr. Dar maintains that Dr. Henderson's report is not a good faith effort to comply with Chapter 74 because he "fails to link the facts to his opinions," showing "how [Muns's] injuries were caused by Dr. Dar." Likewise, Mourning maintains that, among other things, Dr. Henderson's report is conclusory and speculative on the issue of causation.

Dr. Henderson's report only mentions Dr. Dar by name at the outset to identify Dr. Dar as agreeing to accept Muns's transfer to ORMC. Otherwise, Dr. Henderson's report does not reference Mourning by name. With respect to causation, Dr. Henderson's report reads, in relevant part, as follows:

> The nursing report indicated the patient had a very unsatisfactory stay at the hospital and had developed issues with the attending physician, apparently a patient allegation of abuse had been filed with the hospital supervising administrator at that time, concerning both the attending physician and a charge nurse involved in the encounter with the patient extubated at 09:50 a.m. on 08/25/2020 where the alleged abuses took place. There is very little documentation during the hour Mr. Muns alleged the abuse by staff took place, if allegations are true, this is a serious departure of the standard for delivery of ethical care. Physicians are to be always professional and never to be verbally abusive to other staff, patients, and their families at any time. *If these allegations Mr. Muns says are true, the events could have caused him mental and physical trauma.* With the evidence that I have seen in Mr. Muns' medical record from Odessa Regional Medical Center and the care he has received since the alleged incident, I feel Mr. Muns is being truthful about the abuse. Mr. Muns suffers from severe PTSD and is unable to work and has trouble with daily functioning. He continues to receive psychiatric treatment weekly with medication administration.

(emphasis added).

As to causation, an "expert must explain, based on facts set out in the report, how and why" a health care provider's breach proximately caused the injury. *Columbia Valley Healthcare Sys., LP v. Zamarripa*, 526 S.W.3d 453, 459–60 (Tex. 2017). Proximate cause has two components: (1) foreseeability; and (2) cause-in-fact. *Id.* at 460. An act or omission qualifies as the cause-in-fact of harm if, but for the act or omission, the harm would not have occurred. *Id.* A bare expert opinion that only states that the alleged breach caused the injury does not suffice as a "good-faith effort." *Id.*

"An expert cannot simply opine that the breach caused the injury." *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). "Instead, the expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Id.* at 539–40. Although Muns's description of the treatment he allegedly received suggests a wide array of behavior that, if true, can be characterized as abusive, Dr. Henderson's report does not identify any specific abusive behavior that caused the psychological conditions described therein. *See Ehrlich v. Miles*, 144 S.W.3d 620, 628 (Tex. App.—Fort Worth 2004, pet. denied) (report failed to identify negligent activities that independently caused damages and/or state that multiple activities combined to cause damages). Furthermore, Dr. Henderson does not explain how Mourning's or Dr. Dar's purported behavior caused the alleged psychological injuries that Muns suffered. Instead, he merely states his global conclusions about causation. Conclusory statements such as this do not constitute a good faith effort to comply with the statute. *See Barko v. Genzel*, 123 S.W.3d 457, 460 (Tex. App.—Eastland 2003, no pet.) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52–54 (Tex. 2002); *Palacios*, 46 S.W.3d at 879); *Doades v. Syed*, 94 S.W.3d 664, 672 (Tex. App.—San Antonio 2002, no pet.) (expert report contained "mere conclusions regarding breach and causation").

Additionally, the causal connection between the defendant's negligence and the claimed injuries cannot be based upon mere conjecture, speculation, or possibility. *Morrell v. Finke*, 184 S.W.3d 257, 272 (Tex. App.—Fort Worth 2005, pet. denied) (citing *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995)). Here, Dr. Henderson's statement, "[i]f these allegations Mr. Muns says are true, the events could have caused him mental and physical trauma," is nothing more than a statement of possibility. *See id.* As such, Dr. Henderson's report did not provide a basis for the trial court to conclude that Muns's claims have merit. *See Jelinek*, 328 S.W.3d at 539–40.

Wilson's report also attempts to address the issue of causation.[5] However, Wilson, as a registered nurse, is not a physician qualified to opine on medical causation. *See* CIV. PRAC. & REM. § 74.351(r)(5)(C) ("with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care," an "expert" must be a physician who is otherwise qualified to render the opinion); *see also, e.g.*, *Kelly v. Rendon*, 255 S.W.3d 665, 675 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[U]nder the statute, a nurse is not qualified to render an opinion on medical causation.").

We conclude that the trial court abused its discretion when it determined that Dr. Henderson's report constitutes a good faith effort to satisfy the statutory requirements for causation. We also conclude that the trial court abused its discretion to the extent that it relied on Wilson's report to establish causation, since Wilson is not qualified to render such opinion under the terms of the statute. Because

---

[5]In her report, Wilson states that "Mr. Muns is claiming he suffered severe emotional distress and was diagnosed with PTSD and anxiety/Depression [sic] disorder and requires continuous mental Health interventions and medications. . . . If this assault on Mr. Muns took place, it would have been prevented if Mr. Muns was not re-intubated."

our conclusions regarding the causation element of the reports are dispositive of the appeal, we do not reach Mourning's arguments regarding other opinions that are expressed in the reports. *See* TEX. R. APP. P. 47.1.

The issue raised by Dr. Dar and Mourning are sustained in part. In this regard, both Dr. Dar and Mourning seek a reversal and rendition in their favor with prejudice along with a remand for the trial court to determine their recovery of reasonable attorney's fees and costs. In doing so, Dr. Dar and Mourning are essentially asserting that Dr. Henderson's and Wilson's reports were so deficient as to constitute no report at all.

Section 74.351(c) provides:

> If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the applicable deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

CIV. PRAC. & REM. § 74.351(c). As noted above, the expert reports are deficient, and thus, the trial court abused its discretion by denying the motions to dismiss. However, this is the first time in this cause that the expert reports have been found deficient. The statute allows a trial court to grant one thirty-day extension for the claimant to cure a deficiency in an expert report. *Id.* A trial court must grant an extension if the report's deficiencies are curable. *Zamarripa*, 526 S.W.3d at 461; *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). While we have determined that the expert reports are deficient, we cannot conclude that they are incurable. Therefore, the trial court must have an opportunity to consider whether an extension should be granted under the statute. *See Zamarripa*, 526 S.W.3d at 461.

*This Court's Ruling*

We reverse the order of the trial court denying Dr. Dar's and Mourning's motions to dismiss, and we remand this cause to the trial court for further proceedings consistent with this opinion.


JOHN M. BAILEY

CHIEF JUSTICE


October 24, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.